# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

MICHAEL POSTAWKO, et al.,     )

                                  )

               Plaintiffs,     )

                                  )    Case No. 16-04219-CV-C- NKL

v.                             )

                                  )

MISSOURI DEPARTMENT OF     )

CORRECTIONS, et al.,     )

                                  )

               Defendants.     )

## MDOC DEFENDANTS' SUGGESTIONS IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................ iii

I.      INTRODUCTION. ............................................................................................................1

II.     PLAINTIFFS PRESENT NO EVIDENCE, AND THUS FAIL TO CARRY THEIR
        BURDEN TO DEMONSTRATE THAT CLASS CERTIFICATION IS PROPER. ........3

III.    PLAINTIFFS HAVE NOT MET THEIR BURDEN TO DEMONSTRATE THAT
        CLASS CERTIFICATION IS PROPER FOR THEIR EIGHTH AMENDMENT
        CLAIMS FOR INJUNCTIVE RELIEF (COUNT I). .........................................................4

        A.      Plaintiffs' proposed class cannot be certified under Rule 23(b)(2), because the
                question of whether each class member has a "serious medical need" for
                Eighth Amendment purposes necessarily involves a highly individualized
                determination. ........................................................................................................ 5

        B.      Plaintiffs' proposed class cannot be certified under Rule 23(b)(2), because the
                question of whether each inmate is receiving adequate medical treatment for
                their specific HCV infection involves a highly individualized determination. .........7

        C.      Plaintiffs' framing of their case one challenging an MDOC "policy" does not
                convert their individualized claims into claims suitable for class treatment under
                Rule 23(b). ............................................................................................................12

        D.      Plaintiffs fail to meet their burden of demonstrating that the requirements of Rule
                23(a) are satisfied. ...............................................................................................15

IV.     PLAINTIFFS HAVE NOT DEMONSTRATED THAT CLASS CERTIFICATION IS
        PROPER FOR THEIR ADA CLAIMS (COUNT II). ......................................................16

V.      CERTIFICATION OF THE CLASS WOULD VIOLATE THE RULES ENABLING
        ACT. ................................................................................................................................17

VI.     ANY CERTIFICATION OF PLAINTIFFS' CLASS WOULD BE PREMATURE. .......18

VII.    CONCLUSION ................................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Angela R. v. Clinton*, 999 F.2d 320 (8th Cir. 1993) ........................................................................ 15

*Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010) ........................................ 5, 12, 13

*Barbeau v. City of Minneapolis*, 596 F.3d 465 (8th Cir. 2010) .................................................... 17

*Barfield v. Sho-Me Power Elec. Co-op*, No. 11-cv-04321-NKL, 2013 WL 3872181, at *2

        (W.D. Mo. July 25, 2013) ................................................................................................ 16

*Bender v. Regier*, 385 F.3d 1133 (8th Cir. 2004) ............................................................. 6, 7, 8, 9

*Bennett v. Nucor Corp.*, 656 F.3d 802 (8th Cir. 2011) .................................................................. 16

*Berger v. Xerox Ret. Income Guar. Plan*, 338 F.3d 755 (7th Cir. 2003) .................................... 13

*Black v. Alabama Dep't of Corrections*, 578 Fed. Appx. 794 (11th Cir. 2014) .......................... 10

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) ................................................................ 19

*Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005) .................................................................... 17

*Camberos v. Branstad*, 73 F.3d 174 (8th Cir. 1995) ...................................................................... 6

*Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013) ........................................................................ 3

*Connector Castings, Inc. v. Joseph T., Ryerson & Sons, Inc.*, No. 4:15–CV–851 SNLJ,

        2015 WL 6431704, at *4 (E.D. Mo. Oct. 21, 2015) ...................................................... 19

*DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995) .................................................. 13

*Dinkins v. Missouri Dep't of Corrections,* 743 F.3d 633 (8th Cir. 2014) .................................... 17

*Dodson v. Wilkinson*, 304 Fed. Appx. 434 (6th Cir. 2008) .......................................................... 10

*Doninger v. Pac Nw. Bell, Inc.*, 564 F.2d 1304 (9th Cir. 1977) .................................................. 19

*Dotson v. Wilkinson*, 477 F. Supp. 2d 838 (N.D. Ohio 2007) ...................................................... 11

*Ebert v. General Mills, Inc.*, 823 F.3d 472 (8th Cir. 2016) ................................................. 3, 5, 13

*Edmonds v. Robbins*, 67 Fed. Appx. 872 (10th Cir. 2003) .......................................................... 10

*Elizabeth M. v. Montenez*, 458 F.3d 779 (8th Cir. 2006)................................... 13, 14, 15

*England v. Advance Stores Co., Inc.*, 263 F.R.D. 423 (W.D. Ky. 2009)........................ 4

*Estelle v. Gamble*, 429 U.S. 97 (1976) .......................................................... 6, 9

*Fogarazzo  v. Lehman Bros.*, 263 F.R.D. 90 (S.D.N.Y. 2009)...................................... 3

*Forbes v. Edgar*, 112 F.3d 262 (7th Cir. 1997) ................................................... 8

*Gillentine v. Corr. Med. Servs. Inc.*, No. 5:11-cv-02694-RDP-TMP, 2016 WL 7325708,

    at *8 (N.D. Ala. Dec. 16, 2016) ............................................................... 9

*Harris v. Thigpen*, 941 F.2d 1495 (11th Cir. 1991)................................................ 9

*Hill v. Curcione*, 657 F.3d 116 (2d Cir. 2011)................................................... 8

*Hollis v. Dep't of Corrections,* 560 F. Supp. 2d 920 (C.D. Cal. 2008) ....................... 10

*Int'l Woodworker's of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*,

    659 F.2d 1259 (4th Cir. 1981) ............................................................. 1, 4

*Iseley v. Dragovich*, 90 Fed. Appx. 577 (3d Cir. 2004)........................................ 10

*Jackson v. Crawford*, No. 12-4018-CV-C-FJG, 2017 WL 4019053, at *2

    (W.D. Mo. Jan. 30, 2017) ................................................................. 3, 18

*Johnson v. Busby*, 953 F.2d 349 (8th Cir. 1991).................................................. 6

*Johnson v. Million*, 60 Fed. Appx. 548 (6th Cir. 2003) ......................................... 10

*Lewis v. Casey*, 518 U.S. 343 (1996)........................................................... 15

*Loeber v. Andem*, 487 Fed. Appx. 548 (11th Cir. 2012)........................................... 9

*Long v. Nix* 86 F.3d 761 (8th Cir. 1996)....................................................... 8

*Nobles v. State Farm Mut. Auto Ins. Co.*, No. 10-04175-CV-C-NKL, 2012 WL 4090347

    at *2 (W.D. Mo. Sept. 17, 2012)......................................................... 1, 4, 19

*Rothman v. Lombardi*, No. 4:11-cv-639, 2013 WL 4855301, at *7 (E.D. Mo. Sept. 11, 2013) .. 17

Case 2:16-cv-04219-NKL   Document 113   Filed 02/28/17   Page 4 of 25

*Simmons v. Navajo County*, 609 F.3d 1011 (9th Cir. 2010) ......................................... 17

*Villarreal v. Holland*, No. 14-9-DLB, 2016 WL 208310, at *9 (E.D. Ky. Jan. 10, 2016) ............ 8

*Walker w. World Tire Corp. Inc.*, 563 F.2d 918 (8th Cir. 1977) ..................................... 4

*White v. Farrier*, 849 F.2d 322 (8th Cir. 1988) ............................................. 8

*Williams v. Smith*, No. 02 Civ. 4558 (DLC), 2009 WL 2431948, at *7

(S.D.N.Y. Aug. 10, 2009) ................................................................ 8

**Statutes, Rules, Regulations & Other Authorities**

28 U.S.C. § 2072(b .............................................................................. 17

Rule 23(b)(2) ..................................................... 2, 3, 4, 5, 7, 12, 13, 14, 15, 16, 17

# I.    INTRODUCTION

Just after serving their complaint, and prior to any discovery in this case, Plaintiffs seek to certify a putative class of thousands of current and future HCV-positive inmates in the Missouri Department of Corrections ("MDOC").  Plaintiffs submit no evidence on the propriety of class certification, instead relying solely on their pleadings.  But "it is 'seldom, if ever, possible to resolve class representation questions from the pleadings' alone."  *Nobles v. State Farm Mut. Auto Ins. Co.*, No. 10-04175-CV-C-NKL, 2012 WL 4090347 at *2 (W.D. Mo. Sept. 17, 2012) (quoting *Int'l Woodworker's of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1268 (4th Cir. 1981)).  Moreover, Plaintiffs' claims clearly require highly individualized, fact-bound determinations that are unsuitable for class-wide adjudication.  Their motion for class certification should be denied.

MDOC, MDOC Director Anne Precythe, and MDOC employee Adrienne Hardy (collectively the "MDOC Defendants") were first served with the complaint in his action on December 22, 2016 (MDOC and the MDOC Director) and December 30, 2016 (Adrienne Hardy).  On January 24, 2017, Plaintiffs, three MDOC inmates with Hepatitis C ("HCV"), moved to certify a class under Federal Rule of Civil Procedure 23(b)(2) comprising "individuals in the custody of MDOC, now or in the future, who have been, or will be, diagnosed with HCV but who are not provided treatment with DAA drugs." Doc. No. 78, at 1.  Plaintiffs rely solely on the allegations in their unverified complaint and a *Wall Street Journal* article.

Plaintiffs claim that MDOC's failure to provide all HCV-positive inmates within its custody (which Plaintiffs estimate to be over 5,000 individuals) with direct-acting antiviral agents ("DAAs") violates the Eighth Amendment's prohibition on cruel and unusual punishment and the Americans with Disabilities Act ("ADA").  They seek a sweeping injunction requiring

1

MDOC to provide *all* of the estimated 5,000 HCV-positive individuals within in its custody, as well as all future HCV-positive inmates, with newly-approved, prohibitively expensive, DAAs.[1] Plaintiffs seek to certify a class of all HCV-positive inmates even though their complaint concedes that up to 25% of individuals will clear their HCV infection without treatment and another 5-30% may never develop any HCV-related complications.  SAC ¶¶ 37, 44.

Plaintiffs' claims necessarily involve highly individualized examinations of the particular inmate's medial need and the adequacy of the treatment provided. Deliberate indifference to a serious medical need cannot be uniformly assessed across the proposed class, and none of the issues central to Plaintiffs' Eighth Amendment claims can be answered on a class-wide basis. Plaintiffs' ADA claims are likewise ill-suited for class treatment.  Plaintiffs have not met their burden to establish the requirements for class certification, particularly certification of the most cohesive of classes – a Rule 23(b)(2) injunctive class.

---

[1]     According to the *Wall Street Journal* article cited by Plaintiffs in their motion, the average cost of a course of treatment with DAA drugs ranges from $54,000 to $94,000 per patient per 12-week treatment course. Plaintiffs did not attach a copy of the *Wall Street Journal* article they cite in their motion. A copy of the article is attached as Exhibit A.

## II. PLAINTIFFS PRESENT NO EVIDENCE, AND THUS FAIL TO CARRY THEIR BURDEN TO DEMONSTRATE THAT CLASS CERTIFICATION IS PROPER.

Class certification "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks omitted). In order "[t]o come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013) (quoting *Wal-Mart*, 564 U.S. at 350). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart,* 564 U.S. at 350. Instead, a party seeking class certification must "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Comcast*, 133 S.Ct. at 1432 (quoting *Wal-Mart*, 564 U.S. at 350). The proponent of class certification must also "satisfy through *evidentiary proof* at least one of the provisions of Rule 23(b)." *Id.* (emphasis added). "Plaintiffs bear the burden of demonstrating by a preponderance of the evidence that a proposed class meets the requirements for class certification." *Jackson v. Crawford*, No. 12-4018-CV-C-FJG, 2017 WL 4019053, at *2 (W.D. Mo. Jan. 30, 2017) (quoting *Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 98 (S.D.N.Y. 2009)).

Class certification requires the court to conduct a "rigorous analysis" to satisfy itself that the requirements of Rule 23(a) are met. *Comcast*, 133 S.Ct. at 1432. "The same analytical principles govern Rule 23(b)," except that the requirements of 23(b) are more demanding than those of 23(a). *Id.* A Rule 23(b)(2) class requires a showing of cohesiveness "more stringent than the predominance and superiority requirements for maintaining a class action under Rule 23(b)(3)." *Ebert v. General Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016).

Here, Plaintiffs present no evidence to support their motion for class certification. In support of their motion, they cite, but do not attach, a *Wall Street Journal* article. *See* Ex. A. Not only is this article based entirely on hearsay, it addresses, at most, only the numerosity element of class certification. Indeed, Plaintiffs have made no effort to submit any evidentiary proof to meet their burdens of demonstrating commonality, typicality, or adequacy under Rule 23(a), or to meet the stringent cohesiveness requirement of Rule 23(b)(2).

As this Court has recognized, "it is seldom, if ever, possible to resolve class representation questions from the pleadings alone." *Nobles,* 2012 WL 4090347 at *2 (quoting *Int'l Woodworker's of Am.,* 659 F.2d at 1268); *see also Walker w. World Tire Corp. Inc.,* 563 F.2d 918, 921 (8th Cir. 1977) ("The propriety of class action status can seldom be determined on the basis of the pleadings alone.")); *England v. Advance Stores Co., Inc.,* 263 F.R.D. 423, 453 (W.D. Ky. 2009) ("[T]he party who seeks class action status must come forward with basic facts sufficient to show that each requirement of the rule has been satisfied, a determination that ordinarily may not be predicated merely upon the facts alleged in the pleadings.") Because Plaintiffs have not come forward with any facts or evidence to demonstrate that class certification is proper, Plaintiffs' motion should be denied.

## III. PLAINTIFFS HAVE NOT MET THEIR BURDEN TO DEMONSTRATE THAT CLASS CERTIFICATION IS PROPER FOR THEIR EIGHTH AMENDMENT CLAIMS FOR INJUNCTIVE RELIEF (COUNT I).[2]

Plaintiffs seek class certification under Rule 23(b)(2). Thus, Plaintiffs must demonstrate that the requirements of Rule 23(a) and 23(b)(2) are met. Certification under Rule 23(b)(2) is available when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

---

[2] Plaintiffs seek to certify a class only on Counts I and II related to prospective relief. SAC at 25-28. Counts III-VIII are brought by the named Plaintiffs individually. *Id.* at 28-33.

appropriate respecting the class as a whole." *Wal-Mart*, 564 U.S. at 345-46 (quoting Fed. R. Civ. P. 23(b)(2)). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful as to all of the class members or as to none of them." *Id.* at 360. "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* "It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.*

By its nature, a Rule 23(b)(2) class assumes greater commonality than a Rule 23(b)(3) class. *See Ebert*, 823 F.3d at 480 (recognizing that Rule 23(b)(2)'s cohesiveness requirement is "more stringent" than the predominance and superiority requirements of Rule 23(b)(3)). Rule 23(b)(2) certification requires that issues central to the litigation, such as defendants' liability, turn on a single question that applies uniformly across the class, so that "[r]esolution of that question as to one of the plaintiffs necessarily resolve[s] the issue for the entire class." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1036 (8th Cir. 2010) (affirming the denial of Rule 23(b)(2) class certification); *see also Ebert*, 823 F.3d at 481 (holding that the class could not be certified under Rule 23(b)(2), because "[t]he resolution of that single question does not apply uniformly to the entire class, as in reality, the issue of liability and the relief sought by these homeowners is, at bottom, highly individualized.").

### A. Plaintiffs' proposed class cannot be certified under Rule 23(b)(2), because the question of whether each class member has a "serious medical need" for Eighth Amendment purposes necessarily involves a highly individualized determination.

Plaintiffs seek an order requiring MDOC to provide DAAs to the entire class of HCV-positive inmates – that is – *all* HCV-positive individuals who have been, or will be in the future,

in the custody of MDOC. This class definition and request for relief assume that all HCV infections constitute the same "serious medical need" in the Eighth Amendment context, such that the question of deliberate indifference to a serious medical need can be answered uniformly across the class. As a matter of law, it cannot.

In order to prove an Eighth Amendment claim, a plaintiff must prove that the defendant exhibited "deliberate indifference to [his] serious medical needs." *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991)). In *Bender,* an inmate claimed that a prison physician violated his Eighth Amendment rights by not providing him with interferon treatment for his HCV. The Eighth Circuit reversed the denial of summary judgment to the defendant, holding that while HCV "is unquestionably a serious medical problem," the question under the Eighth Amendment "is not whether the infection itself is a 'serious medical need,' but rather whether [the plaintiff] had a serious medical need for prompt interferon treatment." *Bender*, 385 F.3d at 1136.

Bender's holding is fatal to Plaintiff's efforts to certify their proposed class. Under *Bender*, it cannot be assumed that every inmate diagnosed with HCV has a "serious medical need" for any particular treatment under the Eighth Amendment. To the contrary, *Bender* held that HCV, by itself, does not constitute a serious medical need, and that an individualized inquiry into an inmate's particular circumstance is necessary to determine the merits of his claim and whether "prompt [] treatment" is required, and if so, what treatment is appropriate. *Id.*

The allegations of Plaintiffs' complaint directly confirm the holding of *Bender*. Plaintiffs

6

allege that HCV infection "can be either acute or chronic," and acute infections are those that an individual's "body resolves without treatment." SAC ¶ 37. Plaintiffs allege that 75% to 85% of individuals "who develop HCV go on to develop chronic HCV," *id.*, thus conceding that 15% to 25% of HCV-infected individuals have an acute infection that will resolve without treatment.

Plaintiffs allege that chances for complications from HCV are high: "almost everyone (70% to 95%) will develop chronic liver disease," and "at least half will develop cirrhosis or liver cancer." *Id.* at ¶ 44. Plaintiffs provide no evidence to support these allegations, either in their complaint or in their motion for class certification. In *Bender*, the Eighth Circuit cited a "well-respected study" that found "in the twenty-five years following initial infection, twenty percent of those exposed to HCV develop cirrhosis and three to five percent develop fatal complications such as liver cancer." *Bender*, 385 F.3d at 1134. While Plaintiffs' estimates of HCV complications differ substantially from the Eighth Circuit's, even assuming Plaintiffs' unsupported allegations are true, Plaintiffs still concede that not every infected person develops serious complications from HCV or needs prompt treatment.

Thus, *Bender* recognized, and as Plaintiffs' complaint concedes, an HCV infection itself cannot be deemed a "serious medical need" for Eighth Amendment purposes without an individualized assessment of whether the patient's HCV requires the treatment requested. Plaintiffs' putative class – all HCV-positive inmates regardless of infection-type, symptoms, or complications – is overbroad, and the individualized inquiry required into each individual inmate's HCV infection and need for treatment precludes certification under Rule 23(b)(2).

**B. Plaintiffs' proposed class cannot be certified under Rule 23(b)(2), because the question of whether each inmate is receiving adequate medical treatment for their specific HCV infection involves a highly individualized determination.**

It is well established that "[p]risoners do not have a constitutional right to any particular

type of treatment." *Long v. Nix* 86 F.3d 761, 765 (8th Cir. 1996) (citing *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)). "It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *see also Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (Under the Eighth Amendment, an inmate "is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."); *Williams v. Smith*, No. 02 Civ. 4558 (DLC), 2009 WL 2431948, at *7 (S.D.N.Y. Aug. 10, 2009) ("An inmate is not entitled to treatment by every available medical alternative as long as his treatment is reasonable.").

Thus, the necessary proof of Plaintiffs' claims does not rest on the question of whether inmates receive the treatment of their choice – DAA drugs – but rather, whether the treatment each Plaintiff and putative class member received for his or her particular HCV infection was constitutionally adequate so as not to constitute deliberate indifference to a serious medical need. Such an inquiry necessarily turns on the medical needs of the particular patient. *See e.g., Bender*, 385 F.3d at 1135 (referring to the selection of patients for HCV treatment as "highly individualized" and "depend[ent] on many factors"); *see also Villarreal v. Holland*, No. 14-9-DLB, 2016 WL 208310, at *9 (E.D. Ky. Jan. 10, 2016) (noting that treatment for HCV is individualized, and "[t]here is no uniform rule applicable to all cases"); *Gillentine v. Corr. Med. Servs. Inc.*, No. 5:11-cv-02694-RDP-TMP, 2016 WL 7325708, at *8 (N.D. Ala. Dec. 16, 2016) (granting summary judgment in favor of defendants in case where HCV-positive inmate claimed it was deliberate indifference to not treat him with antiviral drugs, and recognizing that determination of deliberate indifference towards inmates with HCV involves examination of "highly individualized" medical determinations) (citing *Loeber v. Andem*, 487 Fed. Appx. 548,

549 (11th Cir. 2012)).

Contrary to Plaintiffs' argument, deliberate indifference requires far more than a showing that an inmate did not receive the drug of his choice or the newest treatment options. Instead, deliberate indifference reflects "an unnecessary and wanton infliction of pain" or a level of mistreatment that is "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976). "Deliberate indifference" encompasses "a level of culpability equal to the criminal law definition of recklessness." *Bender*, 385 F.3d at 1137; *see also Hill*, 657 F.3d at 122 (To constitute deliberate indifference, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.") (internal quotation marks omitted); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (Medical treatment is deliberately indifferent "only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.") (internal quotation marks omitted).

Courts in numerous cases brought by HCV-positive inmates have recognized that deliberate indifference turns on the particular treatment provided to the inmate based on the inmate's particular need. Indeed, several courts have refused to find deliberate indifference even where monitoring was the only treatment provided, because monitoring was sufficient to treat the particular plaintiff's HCV infection in its current stage. *See, e.g.*, *Black v. Alabama Dep't of Corrections*, 578 Fed. Appx. 794, 795-96 (11th Cir. 2014) (affirming grant of summary judgment to prison officials on Eighth Amendment claim where inmate "received regular care and monitoring for [HCV] and medication for his symptoms"); *Dodson v. Wilkinson*, 304 Fed. Appx. 434, 438-40 (6th Cir. 2008) (affirming grant of summary judgment to prison officials and holding that monitoring and enrollment in the prison's Chronic Care Clinic was not deliberate

indifference in light of physician's medical opinion that inmate's HCV was "unlikely to progress to a need for treatment in less than 10 to 20 years" and that testing results indicated that it was "unnecessary for [plaintiff] to receive any kind of medication at this time."); *Iseley v. Dragovich*, 90 Fed. Appx. 577, 581 (3d Cir. 2004) (affirming grant of summary judgment to defendants where the record showed that inmate's "condition was monitored and that he received the appropriate diet, vitamin supplements, and pain medication for treatment of his Hepatitis C related symptoms," and that interferon treatment was not warranted "because his condition had not yet progressed to the point where such treatment would have been appropriate"); *Edmonds v. Robbins*, 67 Fed. Appx. 872, 873 (10th Cir. 2003) (dismissing deliberate indifference claim of HCV-positive inmate where patient was being monitored and medical literature "establish[ed] that medication is not always required for the treatment of hepatitis C"); *Johnson v. Million*, 60 Fed. Appx. 548, 549-50 (6th Cir. 2003) (affirming summary judgment in favor of defendants where inmate was "seen in the prison hepatitis C clinic every three to four months," and "no treatment for HCV had been provided because [his] liver enzyme levels (ALT) had stayed within the normal range."); *Hollis v. Dep't of Corrections,* 560 F. Supp. 2d 920, 924-28 (C.D. Cal. 2008) (granting motion to dismiss inmate's Eighth Amendment claim where he claimed he should have received interferon treatment, but it was sufficient that he saw medical personnel and had his HCV monitored); *Dotson v. Wilkinson*, 477 F. Supp. 2d 838, 848-49 (N.D. Ohio 2007) (granting motion to dismiss inmate's claim he should have received certain HCV treatment, because his "difference in opinion with prison medical personnel regarding the appropriate diagnosis and treatment for his [HCV]" did not state a deliberate indifference claim).

Plaintiffs' complaint itself concedes that different cases of HCV may require different treatment or none at all. For example, Plaintiff Christopher Baker alleges that in 2009 he was

treated with the "then-prevailing treatment, interferon and ribavirin," which "appeared to be working." SAC ¶ 110. Thus, Plaintiffs concede that certain treatments other than DAAs "appear to work" in the treatment of HCV. In addition, Plaintiff Postawko claims that his HCV was "asymptomatic for approximately one-and-one half to two years," and concedes that during that time, he declined any form of treatment. SAC ¶ 101; *see also id.* ¶¶ 37, 44 (conceding that some individuals clear the infection on their own and not all develop complications).

Nor do Plaintiffs claim – because they cannot –that DAAs are never provided to inmates in MDOC's custody, or that MDOC does nothing at all for HCV-positive inmates. As Plaintiffs concede, MDOC medical personnel provide treatment, monitoring, medication for pain symptoms, and at least some form of counseling. *See, e.g.*, *id.* ¶ 89 (alleging that MDOC uses an "APRI score" to measure the progression of fibrosis or cirrhosis and "determine whether a person should be treated"); ¶¶ 90-93 (discussing alleged considerations used by MDOC for HCV treatment); ¶ 96 (alleging that MDOC classifies inmates as "Chronic Care Clinic Offenders," undertakes monitoring with blood draws every six months and provides them "minimal counseling."); ¶ 98 (conceding that medical visits occur through the Chronic Care Clinic, but alleging that they are permitted to occur via video-conference), ¶ 102 (listing at least seven physicians or medical staff Postawko has seen or who have reviewed his medical condition); ¶ 102 (listing at least nine "treaters" – *i.e.* physicians or medical staff – that Baker has seen for his HCV); ¶ 102 (listing at least seven medical providers Jamerson has seen or "who [have] directed his course of treatment"); SAC ¶ 51 (conceding that a small number of HCV-positive inmates within MDOC have received DAA drug treatment).

In short, HCV treatment is based on individualized medical considerations involving evaluation and testing of each individual inmate. Plaintiffs should not be permitted to use the

provisions of Rule 23 to force MDOC to adopt a one-size-fits-all policy for the treatment of inmates with HCV. Indeed, given the broad spectrum of HCV symptoms and treatments, MDOC and the other defendants should have the ability to prove that the treatment they provide to each HCV-positive inmate is adequate and does not amount to deliberate indifference.

**C. Plaintiffs' framing of their case one challenging an MDOC "policy" does not convert their individualized claims into claims suitable for class treatment under Rule 23(b).**

Plaintiffs premise their proposed class on the theory that MDOC has a "policy" of not providing DAAs to all HCV-positive inmates, and that such failure violates every inmate's Eighth Amendment rights. Plaintiffs' attempt to reframe their claims as addressing a single "policy" does not support class certification.

In *Avritt v. Reliastar Life Ins. Co.,* the Eighth Circuit rejected the plaintiffs' attempt to reframe their case as a challenge to a policy in order obtain Rule 23(b)(2) certification. 615 F.3d 1023, 1035-37 (8th Cir. 2010). The plaintiffs in *Avritt* sought to "frame their claims as solely involving questions about the propriety of Northern's interest-crediting practices," but the court refused to certify the proposed class, because plaintiffs' case was "fundamentally about the plaintiffs' allegations of non-disclosure and deception." *Id.* at 1036. Those issues "varied between plaintiffs" making it an "inappropriate case for injunctive or declaratory relief." *Id.*

In rejecting class certification*, Avritt* explained the unique circumstances in which Rule 23(b)(2) certification is proper. Discussing *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995), the court explained that certification under Rule 23(b)(2) was proper because "[t]he mortgage servicer's liability to the class turned on a single question that uniformly applied to all class members: whether the mortgage servicer was required to use aggregate or individual-item accounting in determining the amount of money to hold in an escrow account." *Avritt*, 615 F.3d at 1036. "Resolution of that question as to one of the plaintiffs necessarily resolved the issue for

the entire class," and accordingly "[c]lass cohesiveness and the possibility of uniform resolution of the plaintiffs' claims [] justified certification under Rule 23(b)(2)." *Id.*; *see also id.* (discussing *Berger v. Xerox Ret. Income Guar. Plan*, 338 F.3d 755, 759-60 (7th Cir. 2003) holding Rule 23(b)(2) certification proper because "[r]esolution of the plaintiff's claims required the court to determine only which of the two methods of computing lump sum payments was proper, a determination that necessarily applied to all members of the class," and "the computation of damages followed mechanically"); *Ebert*, 823 F.3d at 480-81.

As in *Avritt*, no single question can resolve liability uniformly across Plaintiffs' class. Because "in reality, the issue of liability and the relief sought by these [inmates] is, at bottom, highly individualized," Rule 23(b)(2) class certification is improper. *Ebert*, 823 F.3d at 481.

Moreover, class certification is particularly inappropriate where plaintiffs invoke the Court's equitable powers under Rule 23(b)(2) to dictate how Missouri manages its prison system. "Where … the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) (internal quotation marks omitted). In *Elizabeth M.*, the Eighth Circuit vacated the district court's certification of class of patients at three Nebraska state mental health facilities. *Id.* The Eighth Circuit noted that, in certifying the class, the district court "essentially conferred upon itself jurisdiction to assert control over the operation of three distinct mental health facilities, a major component of Nebraska state government." *Id.* The Eighth Circuit cautioned that "[a] federal court may not lightly assume this power." *Id.*

As in *Elizabeth M.*, Plaintiffs in this case seek to certify a class against a state agency that comprises a "major component" of state government. *Elizabeth M.*, 458 F.3d at 784. And the

13

concern about federal intrusion into state government is "heightened in the class action context because of the likelihood that an order granting class certification 'may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability.'" *Id.* (quoting Advisory Committee Notes to 1998 Amendments adopting Fed. R. Civ. P. 23(f)). Here, Plaintiffs estimate that their putative class includes 5,000 HCV-positive inmates at MDOC, plus all future HCV-positive inmates at MDOC. At an estimated cost between $54,000 and $94,000 per course of treatment for *each* inmate, Plaintiffs seek relief for these inmates that would cost between $270 million and $470 million to address 5,000 inmates—many of whom do not need any treatment at all because their infections will resolve on their own.[3]

In essence, Plaintiffs ask this Court to act as a state budget appropriator and redirect

---

[3]     *See* SAC ¶ 65 (listing eight HCV drugs they seek: Solvadi, Olysio, Harvoni, Viekira Pak, Daklinza, Technivic, Zepatier, and Epclusa); Centers for Disease Control ("CDC") Hepatitis C Frequently Asked Questions at https://www.cdc.gov/hepatitis/hcv/hcvfaq.htm#section4 (providing link to University of Washington website for information on HCV drugs approved by FDA at http://www.hepatitisc.uw.edu/page/treatment/drugs); *see also* http://www.hepatitisc.uw.edu/page/treatment/drugs/sofosbuvir-drug#drug-summary (wholesale cost of Solvadi is $1,000 per pill, with a 12-week course costing $84,000; a 24-week course is $168,000, and for those needing other medications in combination with Solvadi, cost is higher); http://www.hepatitisc.uw.edu/page/treatment/drugs/simeprevir-drug (wholesale cost for Olysio: a 12-week supply is $66,360 and a typical 12-week course when used with a total of 24-weeks of peginterferon plus ribavirin is approximately $85,000); http://www.hepatitisc.uw.edu/page/treatment/drugs/ledipasvir-sofosbuvir#drug-summary (wholesale cost of Harvoni is $1125 per pill; 8-week course is $63,000; 12-week course is $94,500, and 24-week course is $189,000); http://www.hepatitisc.uw.edu/page/treatment/drugs/3d (wholesale cost for a 12-week course of *Viekira Pak* is $83,319; the cost for a 24-week treatment course is $166,638); http://www.hepatitisc.uw.edu/page/treatment/drugs/daclatasvir#drug-summary (wholesale cost for 12-week course for Dakliza is $63,000); http://www.hepatitisc.uw.edu/page/treatment/drugs/ombitasvir-paritaprevir-ritonavir (wholesale cost of Technivie for a 12-week course is $76,653, which corresponds to a cost per day of $912); http://www.hepatitisc.uw.edu/page/treatment/drugs/elbasvir-grazoprevir#drug-summary (list price of Zepatier is $54,600 for a 12-week treatment course and $72,800 for 16-week course); http://www.hepatitisc.uw.edu/page/treatment/drugs/epclusa#drug-summary (wholesale cost of Epclusa is $890 per pill; the cost of 12-week course is $74,760).

hundreds of millions of dollars of MDOC's core budget away from competing programs and priorities to address HCV in prisons.  As the Eighth Circuit has repeatedly recognized, such allocation of limited resources among competing priorities is quintessentially a legislative function, and institutional reorganization-by-litigation strains the competence of the federal courts.  *See Elizabeth M.*, 458 F.3d at 784 ("Federal courts operate according to institutional rules and procedures that are poorly suited to the management of state agencies.") (quoting *Angela R. v. Clinton*, 999 F.2d 320, 326 (8th Cir. 1993)); *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("[I]t is not the role of the courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution."). To certify a class with such broad and sweeping implications requires, at bare minimum, a clear and manifest showing that the requirements for class certification have been met.  *See Elizabeth M.*, 458 F.3d at 784.  Plaintiffs have not come close to meeting their burden.

### D. Plaintiffs fail to meet their burden of demonstrating that the requirements of Rule 23(a) are satisfied.

Rule 23(a) requires the proponents of class certification to establish that the elements of numerosity, commonality, typicality and adequacy of representation are met before any type of 23(b) class can be satisfied. Plaintiffs fail to meet their burden under Rule 23(a) because they fail to present evidence as to *any* of the four requirements for certification.

Moreover, with regard to commonality, the proponent of class certification must show "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a).  Commonality requires "Plaintiffs [to] show that their claims 'depend upon a common contention' that 'is capable of class-wide resolution' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Barfield v. Sho-Me Power Elec. Co-op*, No. 11-cv-04321-NKL, 2013 WL 3872181, at *2 (W.D. Mo. July 25, 2013) (quoting

*Wal-Mart*, 131 S.Ct. at 2551). "They must demonstrate that a class wide proceeding will 'generate common answers apt to drive the resolution of the litigation.'" *Id.* (quoting *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011). For all of the reasons set forth above, there are not common issues of fact or law that can be resolved on class-wide basis, and Plaintiffs cannot meet Rule 23(a)'s commonality requirement.

Likewise, with regard to typicality, the proponent of class certification must show that "the claims or defenses of the representative party are typical of those in the class." *Id.* (quoting Fed. R. Civ. P. 23(a)(3)). In this case the typicality requirement is not met because each case of HCV is highly individualized, and thus there are no claims "typical of the class." Whether each class member has "serious medical needs" for DAAs, and whether the treatment provided to each class member is constitutionally adequate, are individualized inquiries unique to each inmate. Thus, the typicality requirement is not and cannot be satisfied in this case.

Similarly, with regard to adequacy, class representatives and class counsel must show that they will "fairly and adequately protect the needs of the class." *Id.* The MDOC Defendants do not dispute the qualifications of class counsel. But the adequacy requirement is not met because the needs and circumstances of each class member are unique, and no class representatives can "fairly and adequately" represent the individualized needs and circumstances of all class members.

## IV. PLAINTIFFS HAVE NOT DEMONSTRATED THAT CLASS CERTIFICATION IS PROPER FOR THEIR ADA CLAIMS (COUNT II).

To show a violation of Title II of the ADA, a plaintiff must prove: "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the jail's services, programs or activities, or was otherwise subjected to discrimination by the jail; and (3) that such exclusion, denial of benefits, or other discrimination

was by reason of his disability." *Barbeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010). Critically, ADA claims "cannot be based on medical treatment decisions." *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("We agree with two other circuits that have recently concluded that a lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions."); *Dinkins v. Missouri Dep't of Corrections*, 743 F.3d 633, 634 (8th Cir. 2014) (affirming dismissal of inmate's claims under the ADA that "were based on medical treatment decisions—including not properly diagnosing and treating Dinkins's pernicious anemia"); *Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); *Rothman v. Lombardi*, No. 4:11-cv-639, 2013 WL 4855301, at *7 (E.D. Mo. Sept. 11, 2013) ("While Plaintiff may disagree with the aggressiveness of treatment provided to him, an inmate cannot base an ADA claim on medical treatment decisions.").

Here, Plaintiffs challenge medical treatment decisions, and thus they have failed to state a claim under the ADA in the first instance. *See Burger*, 418 F.3d at 883. Moreover, even if Plaintiff's ADA clams were otherwise valid, such claims are not amenable to class-wide adjudication for the reasons discussed above. Indeed, the circumstances giving rise to each class member's purported claim of "discrimination" are unique, and MDOC must be given the opportunity in each class member's case to explain why the treatment provided was appropriate, and did not amount to discrimination under the ADA.

## V. CERTIFICATION OF THE CLASS WOULD VIOLATE THE RULES ENABLING ACT.

"[T]he Rules Enabling Act [28 U.S.C. § 2072(b)] forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right." *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2561; *see also Jackson v. Crawford*, No. 12-4018-CV-C-FJG, 2017 WL 401953 (W.D. Mo. Jan. 30, 2017)

(recognizing same and quoting *Wal-Mart*, 131 S.Ct. at 2561). If Plaintiffs' purported class of all HCV-positive individuals at MDOC is permitted to go forward, plaintiffs rights will be enlarged, and the rights of the MDOC Defendants and other defendants will be abridged. Plaintiffs' own complaint concedes that approximately 1,000 putative class members (15-25%) are likely to have acute HCV infections that resolve on their own with no need for treatment. There can be no deliberate indifference to their HCV by not providing DAAs, because they need no treatment. In addition, thousands of other inmates are undoubtedly receiving treatment that is adequate for their HCV, even if it differs from Plaintiffs' proposed treatment. If this class is certified, MDOC has the potential to be found liable and forced to provide relief to thousands of inmates who, if bringing their claims singularly, would be not be entitled to any relief. Because certification of Plaintiffs' class would violate the Rules Enabling Act, their motion should be denied.

## VI.  ANY CERTIFICATION OF PLAINTIFFS' CLASS WOULD BE PREMATURE.

For the reasons stated, Plaintiffs have not met their burden to establish that class certification is proper. In the alternative, if the Court were to consider certifying the proposed class, the MDOC Defendants should be allowed to take discovery before a class is certified.

No discovery has taken place in this case, and the MDOC Defendants were served with the complaint just over 60 days ago. Therefore, if this Court is in any way inclined to grant class certification, it should at least permit defendants the opportunity to conduct discovery and present evidence before ruling on class certification. *See, e.g., Connector Castings, Inc. v. Joseph T. Ryerson & Sons, Inc.*, No. 4:15–CV–851 SNLJ, 2015 WL 6431704, at *4 (E.D. Mo. Oct. 21, 2015) (refusing to dismiss class allegations because "there has been no discovery" and to conduct the class inquiry "at this early stage would be improper"); *Courtright v. O'Reilly Automotive Stores, Inc.*, No. 14-00334, 2014 WL 12623695, at *2-3 (W.D. Mo. July 7, 2014)

(refusing to dismiss class allegations upon request of defendant and allowing parties to engage in discovery to determine whether class certification is proper); *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005) ("When the decision on class certification comes before full merits discovery has been completed, the court must necessarily conduct this preliminary inquiry prospectively.  A decision to certify or not to certify a class may therefore require revisiting upon completion of full discovery."); *Nobles*, No. 10-04175, 2012 WL 4090347, at *7 (W.D. Mo. Sept. 17, 2012) (stating that "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable," and that factual discovery is, in most cases, "the necessary antecedent to the presentation of evidence") (quoting *Doninger v. Pac Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)).

**VII.    CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Class Certification should be denied.

Respectfully submitted,

**JOSHUA D. HAWLEY**,
Attorney General

*/s/ D. John Sauer*
John Sauer, #58721MO
State Solicitor

Office of the Attorney General
P.O. Box 899
Jefferson City, MO 65102
(573) 751-8807 telephone
(573) 751-0774 facsimile
john.sauer@ago.mo.gov

19

/s/ H. Anthony Relys
H. Anthony Relys, #63190
Assistant Attorney General

/s/Amy Haywood
Amy Haywood #66555
Assistant Attorney General

Post Office Box 861
St. Louis, MO 63188
Tel: (314) 340-7861
Fax: (314) 340-7029
E-mail: Tony.Relys@ago.mo.gov

*Attorneys for the Missouri Department of Corrections, Anne L. Precythe, and Adrienne Hardy*

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2017, the foregoing was served via the Court's electronic filing system upon all counsel of record.

/s/Amy Haywood
Amy Haywood

Assistant Attorney General