**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| Michael G. Postawko, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.    2:16-CV-04219 NKL |
| | ) | |
| Missouri Department of Corrections, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**[1]

---

[1] Plaintiffs submit a single combined reply to the oppositions filed separately by the MDOC defendants (Missouri Department of Corrections, Director Anne Precythe, and Adrienne Hardy) and Corizon, LLC. (*See* ECF Nos. 113, 114.)

i

# TABLE OF CONTENTS

I.      **The effect of *Dukes* and *Comcast* on class actions**.................................................. 2

II.     **Rule 23(a)**........................................................................................................ 5

    A.   Numerosity ................................................................................................ 5

    B.   Commonality................................................................................................ 7

    C.   Typicality .................................................................................................. 12

    D.   Adequacy................................................................................................... 15

III.    **Rule 23(b)(2)**.................................................................................................. 15

IV.    **Alternative request to conduct expedited discovery before deciding certification**... 19

Case 2:16-cv-04219-NKL   Document 132   Filed 03/24/17   Page 2 of 28

## TABLE OF AUTHORITIES

**Cases**

*Alpern v. UtiliCorp United, Inc.,*

  84 F.3d 1525 (8th Cir. 1996) ................................................................................................ 12

*Amchen Prods., Inc. v. Windsor,*

  521 U.S. 591 (1997) .............................................................................................................. 3

*Amgen, Inc. v. Conn. Retirement Plans & Trust Funds,*

  133 S. Ct. 1184 (2013) ........................................................................................................ 2

*B.E. v. Teeter,*

  2016 WL 3939674 (W.D. Wash. July 21, 2016) ................................................................. 13

*Beaver Cty. Emps.' Retirement Fund v. Tile Shop Holdings, Inc.,*

  2016 WL 4098741 (D. Minn. July 28, 2016) ...................................................................... 4

*Blades v. Monsanto Co.,*

  400 F.3d 562 (8th Cir. 2005) ........................................................................................ 2, 12

*Bouaphakeo v. Tyson Foods, Inc.,*

  765 F.3d 791 (8th Cir. 2014) ............................................................................................. 3

*Bradley v. Harrelson,*

  151 F.R.D. 422 (M.D. Ala. 1993) ..................................................................................... 18

*Braggs v. Dunn,*

  317 F.R.D. 634 (M.D. Ala. 2016) ................................................................................ 15, 16

*Brown,*

  563 U.S. .......................................................................................................................... 10, 16

*Bumgarner v. NCDOC,*

  276 F.R.D. 452 (E.D.N.C. 2011) ....................................................................................... 18

*Butler v. Suffolk Cty.,*

  289 F.R.D. 80 (E.D.N.Y. 2013) ........................................................................................ 18

*Chimenti v. Penn. Dep't of,*

  2016 WL 1125580 (E.D. Pa. Mar. 21, 2016) ................................................................... 14

*Clarke v. Lane,*

iii

267 F.R.D. 180 (E.D. Penn. 2010) ........................................................................ 18

*Coleman v. Watt,*

40 F.3d 255 (8th Cir. 1994) ........................................................................... 2, 4

*Coley v. Clinton,*

635 F.2d 1364 (8th Cir. 1980) ...................................................................... 2, 3

*Comcast Corp. v. Behrend,*

133 S. Ct. 1426 (2013) .................................................................................. 2, 4

*DeBoer v. Mellon Mortg. Co.,*

64 F.3d 1171 (8th Cir. 1995) ............................................................................. 9

*DeGidio v. Perpich,*

612 F. Supp. 1383 (D. Minn. 1985) ................................................................ 18

*Ebert v. General Mills, Inc.,*

823 F.3d 472 (8th Cir. 2016) ......................................................... 7, 16, 17, 19

*Eisen v. Carlisle & Jacquelin,*

417 U.S. 156 (1974) .......................................................................................... 1

*Gen. Telephone Co. of Sw. v. Falcon,*

457 U.S. 147 (1982) .......................................................................................... 1

*Golan v. Veritas Entm't, LLC,*

788 F.3d 814 (8th Cir. 2015) .......................................................................... 12

*Gries v. Standard Ready Mix Concrete, L.L.C.,*

252 F.R.D. 479 ................................................................................................... 6

*Hartley v. Suburban Radiologic Consultants, Ltd.,*

295 F.R.D. 357 (D. Minn. 2013) ....................................................................... 7

*Helling v. McKinney,*

509 U.S. 25 (1993) ....................................................................................... 9, 10

*Henderson v. Thomas,*

289 F.R.D. 506 (M.D. Ala. 2012) ................................................................... 18

*Hernandez v. Cty. of Monterey,*

305 F.R.D. 132 (N.D. Cal. 2015) .................................................................... 17

*Jackson v. Rapps,*

Case 2:16-cv-04219-NKL   Document 132   Filed 03/24/17   Page 4 of 28

132 F.R.D. 226 (W.D. Mo. 1990) ................................................................................ 4

*Jones v. Gusman,*

296 F.R.D. 416 (E.D. La. 2013) ................................................................................ 17

*Kittle-Aikeley v. Strong,*

844 F.3d 727 (8th Cir. 2016) ................................................................................... 17

*Klug v. Watts Regulator Co.,*

2016 WL 7156478 (D. Neb. Dec. 7, 2016) ................................................................ 7

*Lambertz-Brinkman v. Reisch,*

2008 WL 4774895 (D.S.D. Oct. 31, 2008) .............................................................. 18

*Lockwood Motors, Inc., v. Gen. Motors Corp.,*

162 F.R.D. 569 (D. Minn. 1995) ................................................................................ 4

*Luiken v. Domino's Pizza, LLC,*

705 F.3d 370 (8th Cir. 2013) ................................................................... 5, 11, 19

*Maxwell v. Tyson Foods, Inc.,*

2012 WL 1251110, at *6 (S.D. Iowa July 19, 2012) ................................................ 7

*Parsons v. Ryan,*

754 F.3d 657 (9th Cir. 2014) ................................................................................ 9, 10

*Paxton v. Union Nat'l Bank,*

688 F.2d 552 (8th Cir. 1982) ................................................................................ 6, 10

*Phelps v. Powers,*

295 F.R.D. 349 (S.D. Iowa 2013) .............................................................................. 4

*Sandusky Wellness Ctr., LLC v. Medtox Scientific, Inc.,*

821 F.3d 992 (8th Cir. 2016) ..................................................................................... 3

*Scott v. Clarke,*

61 F. Supp. 3d 569 (W.D. Va. 2014) ......................................................................... 9

*Shapiro v. Midwest Rubber Reclaiming Co.,*

626 F.2d 63 (8th Cir. 1980) ............................................................................... 19, 20

*Stewart v. Winter,*

669 F.2d 328 (5th Cir. 1982) ................................................................................... 14

v

*In re Texas Prison Litig.*,

   191 F.R.D. 164 (W.D. Mo. 1999) ............................................................ 15

*Tinsley v. Covenant Care Servs., LLC*,

   2016 WL 393577 (E.D. Mo. Feb. 2, 2016) ............................................. 7

*Walker v. World Tire Corp., Inc.*,

   563 F.2d 918 (8th Cir. 1977) ........................................................ 1, 6, 19

*Walmart Stores, Inc. v. Dukes*,

   564 U.S. 338 (2011) ........................................................... *passim*

*Williams v. Conway*,

   312 F.R.D. 248 (N.D.N.Y. 2016) ......................................................... 9

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,

   644 F.3d 604 (8th Cir. 2011) ........................................................ 1, 4, 5, 6

**Rules**

Fed. R. Civ. P. 23(a) ........................................................... *passim*

Fed. R. Civ. P. 23(b)(2) ............................................................ 16

Fed. R. Civ. P. 23(c)(1)(A) ......................................................... 19

**Other Authorities**

1 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 7.21 (5th ed. 2016 update) ........ 4, 15

7AA C. Wright & A. Miller, FED. PRAC. & PROC. CIV. § 1776 (3d ed.) ...................... 15

Case 2:16-cv-04219-NKL   Document 132   Filed 03/24/17   Page 6 of 28

## Argument

Defendants mischaracterize Plaintiffs's burden at the class certification stage. As the Supreme Court recognized in *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), "*sometimes* it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* at 350 (*quoting Gen. Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)) (emphasis added); *see also Falcon*, 457 U.S. at 160 ("[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim"); *see also Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977) (holding that class certification can "seldom"—but not never—"be determined on the basis of the pleadings alone").

This case is one in which the issues around class certification—not the ultimate questions relating to liability, of course—are plain from the pleadings. Despite their opposition to Plaintiffs' motion for class certification, Defendants do not seriously contest any of the *factual allegations* underpinning that motion: that there are several thousand HCV-positive inmates in the custody of the Missouri Department of Corrections (Second Am. Compl. ¶ 51, ECF No. 30); that treatment with one of the FDA-approved DAA drugs would effectively cure those inmates and quickly eliminate the threat of transmission to non-infected persons (Second Am. Compl. ¶¶ 52, 66, 143); and that Defendants have created, implemented, and maintained a policy of *not* curing HCV-positive inmates until, at best, they are irreversibly and life-threateningly ill (Second Am. Compl. ¶¶ 88–89). But even if Defendants contest these allegations in ways relevant to class certification, Plaintiffs have attached supportive exhibits[2] whose relevance is explained in more detail below.

---

[2]      Contrary to Defendants' contention, evidence submitted at the class certification stage need not be admissible. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 611 (8th Cir. 2011) ("We have never

1

## I.  The effect of *Dukes* and *Comcast* on class actions

As a preliminary matter, it is important to describe the effects of *Dukes* and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), two recent Supreme Court cases reviewing—and reversing—district court certification of unwieldy class actions with millions of members across multiple states. Defendants seem to believe that *Dukes* and *Comcast* upended a half-century of class-action case law. This is simply not so.

To the contrary, the decisions reaffirm many blackletter principles of class-action law in two unusually disjointed cases that would have strained those principles: that plaintiffs have the burden to show the appropriateness of class certification; that the Rule 23(a) and (b) requirements need to be actually met; that the court should avoid making determinations about the merits of the case to the extent practicable, though some determinations are likely unavoidable; and that Rule 23(b)(2) remains uniquely suited for civil rights suits. *See, e.g.*, *Amgen, Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. . . . [A]n evaluation of the probable outcome on the merits is not properly part of the certification decision.") (internal citations and quotation marks omitted); *Blades v. Monsanto Co.*, 400 F.3d 562, 569 (8th Cir. 2005) ("[factual] disputes may be resolved only insofar as resolution is necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case for the class"); *compare Coleman v.*

---

required a district court to decide conclusively at the class certification stage what evidence will ultimately be admissible at trial."); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974) (a Rule 23 determination is "of necessity . . . not accompanied by the traditional rules and procedures applicable to civil trials").

Case 2:16-cv-04219-NKL   Document 132   Filed 03/24/17   Page 8 of 28

*Watt*, 40 F.3d 255, 258–59 (8th Cir. 1994) *and Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980), *with Sandusky Wellness Ctr., LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) (reversing denial of (b)(3) class certification on commonality and predominance grounds and reciting standards from *Dukes*) *and Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 797 (8th Cir. 2014) (affirming certification in (b)(3) donning-and-doffing case where defendant had "a specific company policy . . . that applied to all class members" even where that policy affected members differently due to differences in personal protective equipment and clothing between positions, individual routines, variation in duties, and variation in department management and reciting standards from *Dukes*), *aff'd by* 136 S. Ct. 1036 (2016).

To this latter principle concerning civil-rights cases, Defendant Corizon boldly declares that *Coley* "is outdated and has been overruled," presumably by *Dukes*. (ECF No. 114 at 6.) This is wrong. In *Coley*, the Eighth Circuit held that Rule 23(b)(2) "must be read liberally in the context of civil rights suits." 635 F.2d at 1378. The *Coley* court grounded this holding in the history of Rule 23, particularly "[b]ecause one purpose of Rule 23(b)(2) was to enable plaintiffs to bring lawsuits vindicating civil rights." *Id.* The *Dukes* Court—far from overruling this rationale—actually *confirmed* the *Coley* reasoning:

> Because Rule 23 stems from equity practice that predated its codification, in *determining its meaning* we have previously looked to the historical models on which the Rule was based . . . [and] civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant to capture.

*Dukes*, 564 U.S. at 361 (internal citations, brackets, and quotation marks omitted; emphasis added); *see also Amchen Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Therefore, under both *Coley* and *Dukes*, it remains appropriate to consider the purpose of Rule 23(b)(2) in determining what it means for plaintiffs at the class-certification stage.

3

Plaintiffs do not dispute that they bear whatever burden there is to show class certification is appropriate. *See Coleman*, 40 F.3d at 258. But contrary to Defendants' repeated assertions, neither *Dukes* nor Rule 23 "specifies a particular burden of proof" for plaintiffs moving for class certification. 1 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 7.21 (5th ed. 2016 update).

The Eighth Circuit, like the Supreme Court, has never articulated a particular evidentiary burden for a party moving for class certification. Indeed, at least two district courts in this circuit have held—post-*Dukes*—that they "take[ ] the substantive allegations in the plaintiff's complaint as true" at the class certification stage. *Beaver Cty. Emps.' Retirement Fund v. Tile Shop Holdings, Inc.*, 2016 WL 4098741, at *2 (D. Minn. July 28, 2016) (citing *Lockwood Motors, Inc., v. Gen. Motors Corp.*, 162 F.R.D. 569, 573 (D. Minn. 1995); *Phelps v. Powers*, 295 F.R.D. 349, 353 (S.D. Iowa 2013) (same); *see also In re Zurn Pex*, 644 F.3d at 618; *Jackson v. Rapps*, 132 F.R.D. 226, 230 (W.D. Mo. 1990) ("The class determination is made at the pleading stage, so the substantive allegations of the plaintiff . . . are accepted as true for the purposes of the class motion. The Court may go beyond the pleadings in determining whether class action prerequisites have been met, but may not review the sufficiency or substantive merits of [the plaintiff's] allegations.") (internal citation omitted).

*Comcast*, which involves exclusively a putative damages class certified under Rule 23(b)(3), focuses on a predominance inquiry not relevant here and has limited applicability to this case except the re-affirmation of the rules governing all class actions. Like *Dukes* and Rule 23 itself, *Comcast* does not set out any particular evidentiary burden for a party moving for class certification except to say generally that a movant "must . . . satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." 133 S. Ct. at 1432. The *Comcast* Court did not

4

comment on the strength or nature of the evidentiary proof required under Rule 23(b)(2) and certainly did not adopt a preponderance-of-the-evidence standard—or any particular standard; nor did the Court comment on the unique civil-rights function of Rule 23(b)(2) classes.

Regardless, because the Defendants do not seriously dispute Plaintiffs' factual allegations—and in fact, confirm them almost wholesale in their supporting evidence—this Court need not decide whether this is a case in which it should look beyond the parties' pleadings at the class-certification stage. The Eighth Circuit has recognized that the "rigorous analysis" required of a district court considering class certification is less than what is required at the summary judgment or trial stage. *See In re Zurn Pex*, 644 F.3d at 613; *see also Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 377 (8th Cir. 2013) (reaffirming after *Dukes* that, at least as to Rule 23(b)(3), the court's analysis should be both "rigorous" and "a preliminary inquiry" that is "limited in scope"). Based on the well-pled facts and evidence now before the Court, Plaintiffs' motion for Rule 23(b)(2) class certification should be granted.

## II.     Rule 23(a)[3]

### A.  Numerosity

Defendants submitted an affidavit from Dr. Thomas Bredeman, associate regional medical director for DOC and Corizon, who can presumably access the records needed to determine conclusively how many inmates with a known HCV infection are in Defendants' custody. (ECF No. 120-1.) Yet Defendants fail to dispute Plaintiffs' allegations that there are several thousand such inmates. (*See* Second Am. Compl. ¶¶ 47, 51 at 11); *see also* Individual Defs.' Ans., including Bredeman, ¶¶ 47, 51, ECF No. 65 at 6–7 (stating defendants are without

---

[3]     Plaintiffs incorporate their earlier arguments here, as relevant. (*See generally* ECF No. 78.)

5

sufficient knowledge to admit or deny allegations).) For the reasons given in Plaintiffs' motion for class certification, Plaintiffs' uncontroverted allegations are sufficient to show numerosity.

However, Plaintiffs have attached two articles, from *The Wall Street Journal* and the medical journal *Health Affairs*, evidencing the number of HCV-positive inmates in Missouri custody. (*See* **Ex. 1 at 6 and Ex. 2 at App'x 9.**) Both articles are consistent, given their respective dates of publication, and attribute the reported numbers to the Department of Corrections itself.[4] In addition, Plaintiffs have attached MDOC's own statewide Hepatitis statistics for 2016. (**Ex. 3.**) These data show that on average there were 5,118 inmates in the HCV chronic care clinic in 2016. *See id.*[5]

Plaintiffs also have attached the 2014 *Annual Report of the Joint Committee on Corrections of the Missouri General Assembly*, which corroborates Plaintiffs' allegation that there are several thousand inmates with a known HCV infection in the custody and care of DOC. (*See* **Ex. 4.**) According to the *Report*, six separate DOC facilities claim Hepatitis C is one of the most common health conditions affecting inmates in their custody. (*See id.* at 19 (Boonville), 25 (Chillicothe), 97 (Moberly – 285 enrollees in the HCV "chronic care clinic"),[6] 105 (Northeast), 146–47 (Western Missouri), and 166 (WERDCC).) The numbers reported in the publications and

---

[4]    It is immaterial that these articles could possibly be inadmissible at trial because Plaintiffs are not required to prove admissibility at this pre-discovery stage. *See In re Zurn Pex*, 644 F.3d at 611; *see also Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977) (holding that if "the pleadings themselves do not conclusively show whether the Rule 23 requirements are met," parties must be afforded opportunity for discovery).

[5]    These data also demonstrate that in 2016, only nine inmates were started on a DAA drug and twelve inmates completed treatment with a DAA drug. Of those receiving treatment, *none* failed treatment, failed to respond to treatment, were discontinued because of adverse effects, or were discontinued because of non-compliance. (Ex. 3.)

[6]    The population of HCV-positive inmates at Moberly Correctional Center alone would suffice to show numerosity. *See, e.g., Gries v. Standard Ready Mix Concrete, L.L.C.*, 252 F.R.D. 479, 484–85, 485 n.4 (N.D. Iowa 2008) (recognizing that the Eighth Circuit has not established "arbitrary" or "rigid" rules about the number of people required for numerosity); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559–60 (8th Cir. 1982), (collecting out-of-circuit cases that together suggest "some courts apply a rule of thumb that a class of over 40 persons is sufficiently numerous").

the *Report* are consistent with an HCV infection rate of approximately 15% at correctional facilities nationwide, a percentage commonly reported that Defendants do not controvert. (*See* Ex. 1 at 2; Ex. 2 at 1 (citing other medical journal articles).)

Because there are several thousand putative Class members, including future members whose identities are unknowable, and because requiring each putative Class member to file his or her own suit would waste judicial resources, the proposed Class meets the numerosity requirement.

### B. Commonality

In *Ebert v. General Mills, Inc.*, the Eighth Circuit reaffirmed that "a single common question 'will do' for purposes of Rule 23(a)(2)." 823 F.3d 472, 478 (8th Cir. 2016) (contrasting the commonality requirement with the predominance prong of Rule 23(b)(3)). Although commonality was not challenged on appeal in that environmental-contamination case, the court noted in dicta that it "did not necessarily disagree" with the district court's holding that the defendant's "standardized conduct of alleged contamination and the remedies sought by the class [were] common to all plaintiffs." *Id.*; *see also id.* at 478 n.3 (declining to reach the issue of whether defendant had waived commonality argument and instead "conced[ing] that this action satisfies the commonality requirement"); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (rejecting defendants' contention in mortgage case that, because class members had "claims of differing strengths," class failed commonality and holding instead that because "all members of the class [were] interested in a satisfactory common course of conduct in the future servicing of their loans," there was "declaratory and injunctive nexus . . . sufficient to establish the requisite commonality").[7]

---

[7] Again apparently based on its belief that *Dukes* changed everything about class actions, Defendant Corizon contends that the characterization of commonality as a "light burden" is "no longer good law." (ECF No. 114 at 9.)

Plaintiffs seek class certification on whether Defendants' protocols to withhold HCV treatment violate the Eighth Amendment and the Americans with Disabilities Act. Their uncontroverted substantive allegations alone meet the commonality prong of Rule 23(a), (*see* Second Am. Compl. ¶¶ 47, 51, 68, 70, 72, 80–99, ECF No. 30), and Plaintiffs already set forth common questions that Defendants do not controvert. (ECF No. 78 at 6–7.) Indeed, Dr. Bredeman avers that Defendants *do* have written pathways for handling inmates with HCV, based primarily on APRI score, which Plaintiffs allege is contrary to the medical standard of care and amounts to deliberate indifference. (*See* ECF No. 120-1, ¶ 3 (Bredeman Aff.); Second Am. Compl. ¶¶ 80–87, 89–91, ECF No. 30; **Ex. 5, Declaration of Dr. Blair Thedinger**, ¶¶ 10–11.)[8] However, to the extent that the existence of standardized conduct common to all members of the putative Class remains at issue, Plaintiffs have attached grievance and informal resolution request responses repeatedly acknowledging the existence and nature of the policies Plaintiffs set forth in their complaint and relying upon them as the sole basis for denial of life-saving treatment. (***See generally*** **Ex. 6, grievance responses.**)

Defendants' argument about commonality boils down to their contention that inmate medical decisions *always* involve individualized treatment decisions that are, by their very nature, unsuitable for class treatment even when all are attributable to an overarching policy or

---

This is, at best, an overstatement. Although other circuits have commented that the commonality requirement is more weighty now, the Eighth Circuit has neither agreed nor signaled it may yet do so. *See Ebert*, 823 F.3d at 478. In fact, district courts in this circuit have continued to recite the light-burden language after *Dukes*. *See Klug v. Watts Regulator Co.*, 2016 WL 7156478, at *4 (D. Neb. Dec. 7, 2016); *Tinsley v. Covenant Care Servs., LLC*, 2016 WL 393577, at *8 (E.D. Mo. Feb. 2, 2016); *Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 376 (D. Minn. 2013); *Maxwell v. Tyson Foods, Inc.*, 2012 WL 1251110, at *6 (S.D. Iowa July 19, 2012).

[8]      Plaintiffs also allege that Defendants' written policies are, in practice, aspirational. In other words, Defendants deviate from their written HCV protocols for the purpose of delaying and denying treatment even to persons who might qualify for treatment. (*See* Second Am. Compl. ¶¶ 92–93.) It is simply not believable that less than one-half of one percent of HCV-positive inmates—the percentage who have received treatment—have an APRI score of more than 2 when overall rate of cirrhosis among HCV-positive persons is somewhere in the range of 20%. (***See* Ex. 7, attached hereto, CDC Fact Sheet (March 2016), at 2.**)

protocol. This is not a novel argument; correctional defendants have made similar arguments

before. The Ninth Circuit, in a deliberate-indifference class case procedurally similar to this one,

has explained precisely why this argument is meritless:

> Here, the defendants describe the plaintiffs' claims as little more than an aggregation of many claims of individual mistreatment. That description, however, rests upon a misunderstanding of the plaintiffs' allegations. The Complaint does not allege that the care provided on any particular occasion to any particular inmate (or group of inmates) was insufficient, but rather that [Arizona Department of Corrections] policies and practices of statewide and systemic application expose all inmates in ADC custody to a substantial risk of serious harm.
>
> This kind of claim is firmly established in our constitutional law. As the Supreme Court recognized in 1993, "[t]hat the Eighth Amendment protects against future harm to inmates is not a novel proposition." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Noting that it "would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them," *Helling* squarely rejected the proposition, hinted at by the defendants here, that "only deliberate indifference to current serious health problems of inmates is actionable under the Eighth Amendment." *Id.* at 33, 34; *see also id.* at 33 ("We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year."). The Court then emphasized that "[w]e would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery," and that prison officials may not be "deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms." *Id.* In *Farmer v. Brennan*, the Court elaborated on *Helling*'s recognition that a "remedy for unsafe conditions need not await a tragic event," id., by holding that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment," 511 U.S. 825, 828 (1994).

*Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (internal Ninth Circuit citation omitted); *see*

*also Williams v. Conway*, 312 F.R.D. 248, 253 (N.D.N.Y. 2016) (holding that incarcerated

plaintiffs had met commonality requirement by asserting common question of whether jail had

failed to provide reasonable accommodations to deaf and hard-of-hearing inmates, despite jail's

argument that future inmates "will not share the same course of events" as named plaintiff); *Scott*

*v. Clarke*, 61 F. Supp. 3d 569, 585–87 (W.D. Va. 2014) (holding that incarcerated plaintiffs had met commonality requirement by asserting common factual questions of, among others, facility's "refusal to refer or undue delay in referring prisoners for specialized care" and "failure to maintain continuity in the provision of prescribed, potentially life-sustaining medications" and legal question of "[w]hether these policies and practices place the Plaintiffs and other current and future [facility] prisoners at a substantial risk of serious harm to which the Defendants are deliberately indifferent" and commenting that "[o]ther district courts have recognized, in the aftermath of *Wal–Mart*, that its analytical regime concerning 'commonality' does not serve as a barrier to the certification of class actions in cases involving prisoners' claims alleging a pattern and practice of conduct resulting in unconstitutional conditions of confinement").

What is described in *Parsons* is exactly what the putative Class members have in common here: a claim that Defendants' statewide policy of withholding treatment for HCV-positive inmates exposes them all to the same substantial risk of serious harm. (*See* Second Am. Compl., ECF No. 30, ¶¶ 1, 94.) Unwarranted, deliberate exposure to the substantial risk of serious harm from HCV infection *is* the common injury. *See Brown v. Plata*, 563 U.S. 493, 533 (2011); *Helling*, 509 U.S. at 33; Ex. 5, ¶¶ 19, 20. Whether every person who contracts HCV will eventually die of liver disease is beside the point at this stage—or likely ever—and, regardless, certainly does not bear on the class-certification question of whether the overarching policy violates the putative Class members' constitutional and statutory rights.

Unlike in *Dukes*, where the plaintiffs failed to identify "a common mode of exercising discretion that pervades the entire company," 564 U.S. at 356, Defendants' policy here *prevents* individual treaters from making appropriately individualized decisions. To the contrary, the standardized policy inhibits any meaningful abatement of the substantial risk of serious harm that

all HCV-positive inmates face. (*See* Ex. 6); *see also Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (reversing denial of class certification and holding that the question of whether defendant engaged in "allegedly discriminatory promotion procedures" was sufficient to meeting commonality prong even if discrimination affected individual employees different depending on their "qualifications and ambitions"). If this Court ultimately ruled in favor of Plaintiffs, their class claims would have "a common answer capable of resolution in one stroke," *Luiken*, 705 F.3d at 377: potential common answers this Court might give include enjoining Defendants from delaying treatment with a DAA drug to the putative Class members for any nonmedical reason or requiring Defendants to offer treatment with a DAA drug to all putative Class members for whom it is not contraindicated. (*See* Ex. 5, ¶¶ 11, 18.)

Although Defendants acknowledge in their briefing that "DAA medications are appropriate for some" (ECF No. 114 at 14), they do not challenge Plaintiffs' allegation that Defendants have provided DAA medications to less than one-half of one percent of inmates in their custody with a known HCV infection. (*See* Exs. 1, 2; Second Am. Compl. ¶¶ 57, 70.) When a defendant makes the same decision, for the same reason, as to 99% of a group of thousands of people, that *is* a common policy that should be litigated one time. It beggars belief that drugs touted by the medical community as a "cure"[9]—something researchers do not lightly claim—and shown clinically to be effective more than 9 times out of 10 (*see* Exs. 5, ¶¶ 8, 10; Ex. 6 at 2–3; Ex. 7 at 50–68), are nonetheless medically appropriate for substantially less than one percent of HCV-positive inmates. (*See* Ex. 5, ¶ 22.)

---

[9]  *See* ECF No. 120-1, ¶ 10 (Dr. Bredeman acknowledging the AASLD sets out recommendations for HCV treatment); Ex. 5, ¶ 3 (Dr. Thedinger declaring that AALSD and IDSA set out the HCV standard of care and that the standard of care is available at hcvguidelines.org); Ex. 7 at 3 (CDC stating "the vast majority of hepatitis C infections can be cured, thanks to newly available and highly effective treatment options"); **Ex. 8, PDF version of hcvguidelines.org, titled *Recommendations for Testing, Managing, and Treating Hepatitis C*, attached hereto**, at 30–31 (describing effect of DAA drug treatment as "tantamount to a virologic cure" and collecting studies showing the "clinical benefit of cure" and "numerous health benefits").

### C. Typicality

Again, Defendants not only fail to seriously dispute that Plaintiffs Postawko, Baker, and Jamerson are typical, they submit evidence butressing typicality. (*See* ECF Nos. 120-2, 120-3, and 120-4, which confirm Plaintiffs' diagnoses of chronic HCV and lack of DAA-drug treatment; *see also* Ex. 6 at 6, 8 (showing Baker, Jamerson grievance responses are substantively identical to other class members). Because the common injury of all putative Class members is Defendants' classwide failure to treat HCV-positive inmates with one of the several approved DAA drugs, thereby exposing them unconstitutionally to a significant risk of life-threatening harm, and because the named Plaintiffs are undisputedly HCV-positive inmates who (despite repeated requests) have not been treated with a DAA drug and are exposed to the exact same risk, they are typical. *See Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (holding that typicality means that there are "other members of the class who have the same or similar grievances as the plaintiff" and that "[f]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory").

Defendants appear to argue that this Court would need to predict the effect of DAA-drug treatment on each individual putative Class member to resolve the question of typicality. This is false. At best, this inquiry goes wholly to the merits of Plaintiffs' claims and need not and *cannot* be resolved at the class-certification stage. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 821 (8th Cir. 2015) (reversing district court and holding that even where named plaintiffs were potentially subject to defense, because that defense was a "critical issue in this case," their claims were typical); *Blades*, 400 F.3d at 567 (holding, as to Rule 23(b)(3), that "disputes may be resolved only insofar as resolution is necessary to determine the nature of the evidence that

12

would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case

for the class" and that "[t]he closer any dispute at the class certification stage comes to the heart

of the claim, the more cautious the court should be in ensuring that it must be resolved in order to

determine the nature of the evidence the plaintiff would require"). At this stage, Plaintiffs need

not prove that Defendants' policies are unconstitutional; they need only show that they are

*common*, which is not controverted. (*See generally* Ex. 6; ECF Nos. 120-1, 114-2.) Plaintiffs do

submit evidence that DAA drug treatment would be effective for the vast majority of the

proposed Class members (*see* Ex. 7 at 2–3; Ex. 5, ¶¶ 6–8), but making that factual determination

would certainly be premature and may never be necessary in any event.

Further, although Defendants cite a litany of HCV inmate cases, they all predate the FDA

approval of DAA drugs. Before DAA drugs were available, the risk-benefit analysis for

providing the standard treatment to any given person was necessarily different than it is now: the

side effects commonly attendant to the interferon/ribavirin regimen were painful and severe and,

in any event, that regimen had variable ingredients, took four times as long, and was

unsuccessful in a majority of cases. (*See* Second Am. Compl. ¶¶ 53, 55, ECF No. 30; Ex. 8 at 95;

Ex. 5, ¶ 16.)

Defendants' legal arguments, like their protocols, are outdated. None of the cases they

cite demonstrate that Plaintiffs Postawko, Baker, and Jamerson are atypical. *See B.E. v. Teeter*,

2016 WL 3939674 (W.D. Wash. July 21, 2016) (certifying class of Washington state Medicaid

enrollees denied DAA-drug treatment); *see also Abu-Jamal v. Kerestes*, 2016 WL 4574646, at

*13–*14 (M.D. Penn. Aug. 31, 2016) (denying plaintiff's motion for preliminary injunction

because plaintiff had named wrong defendants but commenting "[h]owever, were the proper

defendants named, the Court believes there is a sufficient basis in the record to find that DOC's

current protocol may well constitute deliberate indifference . . . . The protocol put forth by the Hepatitis C Treatment Review Committee exposes inmates in the care of DOC to these risks [of cirrhosis, hepatocellular carcinoma, and death], despite knowing that the standard of care is to treat patients with chronic Hepatitis C with DAA medications such as Harvoni or Sovaldi, regardless of the stage of disease . . . . In the wake of the advent of curative Hepatitis C medications, Defendants have charted a course that denies treatment to inmates until they are on the verge of a catastrophic health event, a decision that appears to contain a fiscal component, and ignores the standard of care for the treatment of chronic hepatitis C") (internal quotation marks and citation omitted) *and later granting preliminary injunction*, 2017 WL 34700 (M.D. Penn. Jan. 3, 2017); *Chimenti v. Penn. Dep't of Corrs.*, 2016 WL 1125580 (E.D. Pa. Mar. 21, 2016) (denying defendants' motion to dismiss in putative class action similar to this one); *Fowler v. Turco*, 1:15CV12298, ECF No. 46, at *1 (D. Mass. July 22, 2016) (with approval of defendants, certifying class of "all people who are or will be prisoners in the custody of [Massachusetts DOC] and who have or will have Hepatitis C while in custody and have not yet been cured" for purpose of seeking declaratory and injunctive relief and holding that the proposed class "satisfies the prerequisites of Rule 23(a) and (b)"); *Smith v. Babich*, 2:15CV55, ECF Nos. 5, 38 (E.D. Mo. Dec. 15, 2015) (denying motion to dismiss in prisoner's individual HCV case against Missouri DOC and treaters brought under the Eighth Amendment, *sua sponte* appointing counsel to prisoner, and—taking prisoner's complaint as true—characterizing it as alleging "a serious and life-threatening medical condition that medical personnel refused to treat" despite prisoner's repeated requests).

14

### D.  Adequacy

Neither Corizon nor MDOC disputes that Plaintiffs' counsel can adequately represent the putative Class members in this putative Rule 23(b)(2) case. (ECF No. 78 at 9–10 (listing attorneys' qualifications).) Defendants also do not dispute that Plaintiffs have common interests with the putative Class—namely, getting prompt, medically appropriate consideration for treatment with a DAA drug. (*See* Ex. 4.) Contrary to Defendants' contentions, seeking individual damages does not disqualify a named plaintiff from being an adequate class representative. *See Stewart v. Winter*, 669 F.2d 328, 334–35 (5th Cir. 1982) ("An individual claim for large damages does not necessarily make a putative representative's interests 'antagonistic' to those of the class; to the contrary, the courts have often viewed the assertion of such a claim as an indication that the representative will prosecute the action vigorously. Of course, if the court has reason to conclude that a plaintiff has neglected or will neglect the claims for injunctive relief in his pursuit of his damage claims, it may find him an inadequate representative. But in this case, there is nothing in the record to indicate that plaintiffs' claims for damages are in any way 'antagonistic' to the class claims for injunctive relief. The complaint, in fact, primarily recites allegations that are applicable to the entire class; it appears that plaintiffs' claims for damages are based on what they claim is the experience suffered by every inmate in the county jails."). Plaintiffs have met their burden on adequacy.

### III.   Rule 23(b)(2)

A case like this one—where a group of prisoners wishes to challenge the constitutionality of a prison policy—is so well suited for Rule 23(b)(2) class treatment that the leading class-action and federal-practice treatises both use it as the exemplar of a case fitting within that subsection: "For example, if a prisoner in a prison conditions lawsuit secures a ruling that a

prison policy violates the Constitution, the court-ordered injunctive relief will necessarily apply to all other prisoners." 1 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 7.21 (5th ed. 2016 update); *see also* Wright & Miller, 7AA FED. PRAC. & PROC. CIV. § 1776 (3d ed.) ("[I]t should be noted that a common use of Rule 23(b)(2) is in actions brought to challenge various practices or rules in the prisons on the ground that they violate the constitution. For example, Rule 23(b)(2) class actions have been utilized to challenge prison policies or procedures alleged to . . . violate the Eighth Amendment rights to be free from cruel and unusual punishment."); *accord in re Texas Prison Litig.*, 191 F.R.D. 164, 179 (W.D. Mo. 1999) ("one of the primary reasons that Rule 23(b)(2) certification was adopted in 1966 was to provide a vehicle to efficiently resolve mass civil rights violations"); *Braggs v. Dunn*, 317 F.R.D. 634, 667 (M.D. Ala. 2016) (commenting that the "Supreme Court has approved of system-wide relief in prison cases involving "systemwide violation[s]" resulting from "systemwide deficiencies" and quoting *Plata*, 563 U.S. at 532).[10] Plaintiffs have alleged, and shown, that Defendants apply the same policies to all members of the putative Class, withhold HCV treatment with any DAA drug on

---

[10]     Relevantly here, the *Bragg* court goes on:

> Defendants are quite right that a single injunction would not be appropriate if plaintiffs sought an order requiring that each named plaintiff be provided the specific forms of treatment he has been denied. They cite *Wal–Mart* for the proposition that Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a <u>different</u> injunction or declaratory judgment against the defendant." 564 U.S. at 360. But Rule 23(b)(2) certainly does not preclude certification merely because the class members <u>could</u> bring separate claims regarding the adequacy of the particular treatment they have individually received—claims which, everyone agrees, could not be resolved with a single injunction or declaratory judgment—when those are not the claims they actually <u>have</u> brought in this lawsuit.

> For some reason, defendants repeatedly misconstrue the claims in the case as demands for individual treatment of various kinds, and then proceed to argue that the individualized claims plaintiffs are not raising cannot be brought in the form of a class action. As the court explained at some length . . . , defendants' position is unwarranted; plaintiffs are not seeking adjudication of demands for particular individualized treatment, and the challenge they are actually bringing—to systemic deficiencies that create a substantial risk of serious harm—are well recognized.

*Id.* at 667 (emphases in original).

16

the same defective bases because of those policies, and have "refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2); *see also* ECF No. 114-2; Ex. 4.

Nonetheless, relying on the environmental-contamination case *Ebert*, Defendants argue that Plaintiffs has failed to show the putative Class is "cohesive." *See* 823 F.3d at 480–81 (discussing "stringent" cohesiveness standard). In *Ebert*, neighborhood property owners sued General Mills for remediation after that company had dumped toxic waste over some decades and the neighborhood was subject to some toxic vapors. The Eighth Circuit held that the class of property owners was not cohesive because the remediation sought was "not even universal" and remediation, if awarded, would have been "unique" to "each of the affected properties." Indeed, some of the class members had already received vapor migration systems customized to their properties and some had not; some members' properties had been tested and no vapors were detectible; and of those homes affected by the vapors, their test results showed "widely varying levels." *Id.* at 481. Further, because the class also sought "hybrid certification" as both (b)(2) and (b)(3) classes, there were "myriad considerations" about the individual proof needed to show causation and damages to each class member. *Id.* at 481; *see also id.* at 479–80.

This case is different. There is a straightforward causal relationship between Defendants' policies relating to HCV management and the putative Class members' lack of treatment and exposure to substantial risk. There are no classwide issues relating to damages. Unlike the plaintiff class in *Ebert*, where some properties had been partially remediated, none of the members of the proposed Class has received treatment with any DAA drug. They all seek precisely the same declaratory and injunctive relief. (*See* Second Am. Compl. ¶¶ 136, 144.) If they were successful, "a single injunction or declaratory judgment would provide relief to each member of the class." *Ebert*, 823 F.3d at 480 (quoting *Dukes*, 131 S. Ct. at 2557); *see also*

*Barrett v. Claycomb*, 11-CV-04242, ECF No. 94, at *8 (W.D. Mo. Nov. 15, 2011) (certifying (b)(2) class where state actor had instituted policy that affected the Fourth Amendment right of each proposed class member "in the exact same way" and commenting that even the exemptions and appeals from that policy affected putative class members generally), *aff'd by Kittle-Aikeley v. Strong*, 844 F.3d 727 (8th Cir. 2016) (en banc) (certification not challenged on appeal).

District courts routinely certify similar prisoner classes for the purpose of determining whether a prison policy or custom amounts to a violation of the Eighth Amendment or the ADA. *See Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 163 (N.D. Cal. 2015) (certifying (b)(2) class of current and future prisoners for deliberate-indifference and ADA claims where, among other things, plaintiffs claimed jail failed to hire enough doctors and their injury, if proved, could "be alleviated for every class member by uniform changes in [jail] policy and practice"); *Jones v. Gusman*, 296 F.R.D. 416, 465–66 (E.D. La. 2013) (assessing Rule 23 requirements at length and approving omnibus consent judgment for claims by pre- and post-trial detainees regarding failures to protect inmates from violence and inadequacies in medical and mental health care at parish jails); *Butler v. Suffolk Cty.*, 289 F.R.D. 80, 101, 103 (E.D.N.Y. 2013) (certifying (b)(2) class of current and future inmates at county jail facilities for purpose of determining whether unsanitary conditions at those jails violated inmates' Eighth Amendment rights); *Henderson v. Thomas*, 289 F.R.D. 506, 512 (M.D. Ala. 2012) (certifying (b)(2) class of all present and future prisoners with HIV for challenge against prison policies relating to segregation of such prisoners, despite differing effects and application of policies); *Bumgarner v. NCDOC*, 276 F.R.D. 452, 457–58 (E.D.N.C. 2011) (certifying (b)(2) class of disabled prisoners for purpose of ADA claim that, among other things, alleged NCDOC was "discriminating against the disabled inmates in the administration of sentence reduction credit programs"); *Clarke v. Lane*, 267 F.R.D. 180, 196,

199 (E.D. Penn. 2010) (certifying (b)(2) class of halfway house residents whose common issues included whether "the policies and practices involving medication prevent residents from timely receiving necessary and life-saving medication"); *Lambertz-Brinkman v. Reisch*, 2008 WL 4774895, at *2-*4 (D.S.D. Oct. 31, 2008) (certifying (b)(2) class of current and future prisoners denied or delayed access to prescribed medications based on decisions of non-medical doctors even though "each individual member of the class may have had different experiences with regard to medical and mental health care at the [prison]"); *Bradley v. Harrelson*, 151 F.R.D. 422, 424–25, 427 (M.D. Ala. 1993) (certifying (b)(2) class of current or future "acutely and severely mentally ill" prisoners where plaintiff "challenge[d] deficiencies in the system for delivering mental health care which affect the entire class"); *DeGidio v. Perpich*, 612 F. Supp. 1383, 1386 (D. Minn. 1985) (certifying (b)(2) class of prisoners who sought "order enjoining defendants to provide adequate treatment to those with positive tuberculosis and to protect others by a quarantine or other measures"). Like in all these cases, it would be most expeditious here to resolve questions about the constitutionality of withholding DAA drugs on a classwide basis, and the proposed Class is cohesive because this Court's resolution of those questions will affect every member thereof.

## IV. Alternative request to conduct expedited discovery before deciding certification

As the parties all recognize, a district court has "broad discretion" to certify or not certify a putative class. *Ebert*, 823 F.3d at 477; *Luiken*, 705 F.3d at 372. Plaintiffs moved for class certification at this stage because Rule 23(c)(1)(A) provides that "the court must determine by order whether to certify the action as a class action" at "an early practicable time" after suit is initiated. If the Court believes that neither Plaintiffs' allegations nor the supportive evidence submitted by the parties is sufficient to prove that they in fact meet the requirements of Rule 23,

Plaintiffs respectfully request that the Court hold their motion in abeyance—or alternately, deny it without prejudice—and set an expedited schedule to conduct discovery related only to issues of class certification. *See Walker*, 563 F.2d at 921 ("Where . . . the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue.").

In addition, Plaintiffs note that this Court's broad discretion in deciding whether certification is appropriate "extends to defining the scope of the class." *Shapiro v. Midwest Rubber Reclaiming Co.*, 626 F.2d 63, 71 (8th Cir. 1980). If this Court, in conducting the rigorous analysis required, determines that class certification may be appropriate but for a differently defined class or subclasses, Plaintiffs respectfully request the opportunity to conduct limited, expedited discovery into issues related to class scope and to submit further briefing on this issue.

For these reasons, Plaintiffs respectfully request that the Court grant their motion for class certification and certify their proposed Class.

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827
Jessie Steffan, #64861
American Civil Liberties Union
      of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63108
Phone: 314/652-3114
Fax: 314/652-3112
trothert@aclu-mo.org
jsteffan@aclu-mo.org

Gillian R. Wilcox, #61278
American Civil Liberties Union
      of Missouri Foundation
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
Facsimile: (314) 652-3112
gwilcox@alcu-mo.org

Mae C. Quinn, #61584
Amy E. Breihan, #65499
MACARTHUR JUSTICE CENTER AT ST. LOUIS
3115 South Grand Blvd., Suite 300
St. Louis, MO 63118
Phone: (314) 254-8540
Fax: (314) 254-8547
mae.quinn@macarthurjustice.org
amy.breihan@macarthurjustice.org

21

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy of the foregoing was filed electronically and served by operation of the CM/ECF system on all counsel of record on March 24, 2017.

<u>/s/ Anthony E. Rothert</u>

22