## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| MICHAEL POSTAWKO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-04219-NKL |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiffs Michael Postawko, Christopher Baker, and Michael Jamerson move for class certification. [Doc. 77]. For the following reasons, the motion is granted.

### I.      Background

Named Plaintiffs Michael Postawko, Christopher Baker, and Michael Jamerson are incarcerated in the Missouri Department of Corrections ("MDOC"). [Doc. 30, p. 3]. They filed this putative class action for claims arising out of what they allege to be inadequate medical care for their chronic Hepatitis C ("HCV") viral infections. [*Id.*]. They bring claims under 42 U.S.C. § 1983 and the Eighth Amendment, as well as Title II of the Americans with Disabilities Act (ADA). [*Id.* at p. 4-9]. They named numerous defendants, including their prison treating physicians and nurses; prison officials who reviewed their grievances and treatment requests; the MDOC; and Corizon, LLC, the healthcare provider for all MDOC facilities. [*Id.*].

### A.      Hepatitis C

HCV is a viral infection that attacks the liver and causes its inflammation, referred to as hepatitis. [*Id.* at p. 9]. Hepatitis caused by HCV can significantly impair liver function and

damage its crucial role in digesting nutrients, filtering toxins from the blood, and preventing disease. [*Id.*]. In turn, liver impairment can cause severe pain, fatigue, muscle wasting, difficulty or pain with urination, an increased risk of heart attacks, and other side effects. [*Id.*].

HCV can be either acute or chronic. [*Id.*]. Some people who are exposed to infected blood develop an acute infection that their body resolves without treatment, while others who develop acute HCV go on to develop chronic HCV. [*Id.* at p. 10]. People with chronic HCV develop fibrosis of the liver, which is a process by which healthy liver tissue is replaced with scarring. [*Id.*]. Because scar tissue cannot perform the jobs of normal liver cells, fibrosis reduces liver function. [*Id.*].

When scar tissue begins to take over most of the liver, this extensive fibrosis is termed cirrhosis. [*Id.*]. Cirrhosis is irreversible, and it often causes additional painful complications, including arthritic pain throughout the body, kidney disease, jaundice, fluid retention with edema, internal bleeding, easy bruising, abdominal ascites, mental confusion, lymph disorders, widespread itching, and even more extreme fatigue. [*Id.*]. Because it can be difficult to determine exactly when significant hepatitis fibrosis becomes cirrhosis, most of these complications can occur before cirrhosis. [*Id.*]. Further, if these complications go untreated, some can cause death. [*Id.*]. At least half of all persons diagnosed with chronic HCV will develop cirrhosis or liver cancer, and between 70 and 90 percent will develop chronic liver disease. [*Id.*]. Each day without treatment increases a person's likelihood of developing chronic liver disease, fibrosis, cirrhosis, liver cancer, and death from liver failure. [*Id.*].

At least 10 to 15 percent of the population under the supervision, care, and custody of the MDOC are infected with HCV. [*Id.* at p. 11]. As of January 2015, the MDOC reported that it

was treating 0.11 percent of HCV-positive inmates under its supervision, or 5 inmates out of 4,736 inmates with known HCV infections. [*Id.*].

### B. Standard of Care for HCV

For many years, there was no effective and safe treatment for HCV. [*Id.*]. The standard treatment, which included the use of interferon and ribavirin medications, failed to cure most patients and was associated with adverse side effects, including psychiatric and autoimmune disorders. [*Id.* at p. 12]. However, over the past four years, the Federal Drug Administration ("FDA") has approved eight new medications, called direct-acting antiviral drugs ("DAA drugs"), which work faster, cause fewer side effects, and are more effective. [*Id.*]. Over 90 percent of patients treated with a DAA drug are cured. [*Id.* at p. 14].

The CDC encourages health professionals to follow the evidence-based standard of care developed by the Infectious Diseases Society of America ("IDSA") and the American Association for the Study of Liver Diseases ("AASLD"), which constitutes the medical standard of care. [*Id.*]. On July 6, 2016, these organizations updated the standard of care to recommend treating *all* persons with chronic HCV with DAA drugs. [*Id.* at p. 15]. Benefits of treatment include an immediate decrease in liver inflammation, reduction in the progression of liver fibrosis and improvement in cirrhosis, a 70 percent reduction in the risk of liver cancer, and a 90 percent reduction in the risk of liver-related mortality. [*Id.*]. Studies show that a delay in DAA drug treatment for HCV decreases the benefits associated with cure. [*Id.*].

### C. Methods for Determining Progression of Fibrosis/Cirrhosis

Health care providers use several methods to determine the advancement of an HCV-positive person's cirrhosis or fibrosis, including liver biopsy and APRI (AST to Platelet Ratio Index). [*Id.* at p. 16]. APRI is the use of a blood sample to determine the ratio of a certain

enzyme in the blood to the number of platelets. [*Id.*]. When an APRI score is very high, it has good diagnostic utility in predicting severe fibrosis or cirrhosis, but low and mid-range scores miss many people who have significant fibrosis or cirrhosis. [*Id.*]. For example, in more than 90 percent of cases, an APRI score of at least 2.0 indicates that a person has cirrhosis, but more than half of all people with cirrhosis will not have an APRI score of at least 2.0. [*Id.* at 17].

If a person has already been diagnosed with cirrhosis through some other means, such as liver biopsy, an APRI score is irrelevant and not necessary for measuring the progression of fibrosis. [*Id.*]. In addition, because the levels of AST and ALT in one's blood fluctuate from day to day, a decreased or normalized level does not mean the condition has improved, and even a series of normal readings over time may fail to accurately show the level of fibrosis or cirrhosis. [*Id.*]. Furthermore, the elevation levels of AST and ALT often fail to show an individual's current level of fibrosis or cirrhosis, and they often fail to predict the consequences of not treating that individual. [*Id.*]. Although ALT is found predominately in the liver and not all over the body like AST, and ALT is a more specific indicator of liver inflammation than AST, an APRI score relies only on AST without taking ALT into account. [Doc. 30, p. 17]. For all of these reasons, using an APRI score alone to determine the severity of a person's fibrosis or cirrhosis is not adequate or appropriate. [*Id.*].

### D. Defendants' HCV Treatment Policy within the MDOC

Plaintiffs further allege that Defendants Precythe, MDOC, and Corizon, LLC have the following policies or customs, all of which are contrary to the prevailing standard of care: (1) not providing DAA drug treatment to all inmates with chronic HCV; (2) using an APRI score, which measures the progression of fibrosis or cirrhosis, to determine whether a person should be treated; (3) relying exclusively on APRI score to determine the stage of fibrosis or cirrhosis,

rather than using other more accurate methods of determining its progression through liver biopsies, FIB-4, or FibroScan; (4) failing to consider providing treatment to HCV-positive inmates unless they have an APRI score above 2.0 that persists for several months, even though more than half of persons with cirrhosis will not have an APRI score at or above 2.0, and they know that AST levels are transient; (5) disregarding independent diagnoses of cirrhosis or significant hepatitis fibrosis in making their treatment decisions; and (6) basing treatment decisions on cost, rather than on need for treatment. [*Id.* at p. 17-18]. Plaintiffs allege that these policies or customs have caused, and continue to cause, unnecessary pain and an unreasonable risk of serious damage to the health of HCV-positive inmates. [*Id.* at p. 18]. As evidence of some of these policies, Plaintiffs submitted eight grievance and informal resolution request ("IRR") responses to inmates' requests for DAA treatment. [Doc. 132-6]. These IRR responses reflect that DAA treatment was denied to each inmate due to their individual APRI scores, including to Named Plaintiff Chris Baker, despite his independent diagnosis of cirrhosis.[1] [*Id.*].

Defendants have repeatedly denied the requests of the Named Plaintiffs and other members of the putative class for DAA drug treatment for their HCV infections. [*Id.* at p. 19]. It is the policy of Defendants to classify inmates with known HCV infection as "Chronic Care Clinic Offenders." [*Id.*]. Rather than receiving DAA treatment, these inmates receive a blood draw every six months and, at times, minimal counseling. [*Id.*].

### E. Named Plaintiffs Postawko, Baker, and Jamerson's Claims

Named Plaintiff Michael Postawko became infected with HCV while under the care and supervision of the MDOC in or around 2012. [*Id.* at p. 20]. Every Defendant treater who

---

[1] For this reason, the Court rejects Defendant Corizon's unsupported contention within a footnote in its sur-reply that these grievance records are somehow "immaterial." [Doc. 142, p. 7 of 16, n. 1].

5

Postawko has seen at the MDOC or who has reviewed his HCV-related complaints has refused to treat Postawko with DAA drugs. [*Id.*].

In 2005, Named Plaintiff Christopher Baker was diagnosed with HCV, and in 2007, he underwent a liver biopsy and was diagnosed with cirrhosis. [*Id.* at p. 21]. In 2008, Baker was sentenced to ten years in the MDOC. [*Id.*]. In 2009, the MDOC began treating Baker with the then-prevailing treatment, interferon and ribavirin, which appeared to be working. [*Id.*]. However, after five months of treatment, the MDOC, through a provider named Dr. McKinney, informed Baker that the MDOC was no longer treating HCV-positive inmates with those drugs and discontinued Baker's course of treatment. [*Id.*]. Since early 2010, Baker has received no further treatment for HCV and has received no treatment at any time with a DAA drug. [*Id.*].

On March 2, 2016, while Baker was incarcerated at JCCC, an Informal Resolution Request response to Baker indicates that he was "placed on a spreadsheet" because he had an APRI score above 1.0, without regard to his pre-incarceration cirrhosis diagnosis, which was made based on a liver biopsy. [*Id.*]. Baker did not receive any treatment as a result of either his independent cirrhosis diagnosis or his placement on a spreadsheet. [*Id.*]. In July 2016, Baker was transferred from JCCC to Algoa Correctional Center where he no longer even appears on a list for treatment. [*Id.*].

Named Plaintiff Michael Jamerson became infected with HCV while incarcerated at the MDOC. [*Id.*]. Jamerson has repeatedly requested treatment with DAA drugs. [*Id.*]. Although Jamerson is enrolled in the Chronic Care Clinic, he has not received any DAA treatment. [*Id.*].

## F. The Proposed Class

The Named Plaintiffs seek certification of a class of similarly situated individuals in the custody of the Missouri Department of Corrections, defined as:

All those individuals in the custody of MDOC, now or in the future, who have been, or will be, diagnosed with chronic HCV,[2] as that term is defined medically, but who are not provided treatment with direct acting antiviral drugs.

Plaintiffs bring two claims on behalf of the putative class: Count I for prospective relief for deprivation of their Eighth Amendment rights against Precythe, in her official capacity, and Corizon, LLC, and Count II for prospective relief for violation of the ADA against the MDOC.[3] Specifically, Plaintiffs seek a declaratory judgment that Defendants' "policy of withholding treatment with DAA drugs from inmates diagnosed with HCV violates the Eighth and Fourteenth Amendments" and the Americans with Disabilities Act. [Doc. 30, p. 25 and 27 ¶¶ 136, 144 (Second Amended Complaint)]. Plaintiffs seek injunctions that (1) direct Defendants to "formulate and implement an HCV treatment policy that meets the prevailing standard of care, including identifying persons with HCV"; (2) direct Defendants to "treat members of the class with appropriate DAA drugs"; and (3) direct Defendants to "provide members of the class an appropriate and accurate assessment of the level of fibrosis or cirrhosis they have, counseling on drug-drug interactions, and ongoing medical care for complications and symptoms of HCV." *Id.*

## II. Discussion

### A. Class Certification Standard

Under Federal Rule of Civil Procedure 23, a motion for class certification involves a two-part analysis. First, under Rule 23(a), the proposed class must satisfy the requirements of

---

[2] Because Plaintiffs concede that some minority of persons exposed to the Hepatitis C virus clear the virus without treatment, they "do not oppose amending their proposed definition of the putative Class to include only persons with *chronic* Hepatitis C as that term is defined medically." [Doc. 148, p. 3 (emphasis added)]. Accordingly, the Court considers this narrower class definition in its Rule 23 analysis, rather than Plaintiffs' original class definition for "all individuals . . . diagnosed with HCV . . ."

[3] Plaintiffs also bring individual claims (Counts III-VIII) for damages under the Eighth Amendment and the ADA.

7

"numerosity, commonality, typicality, and fair and adequate representation." *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013). Second, the proposed class must meet at least one of the three requirements of Rule 23(b). *Comcast Corp. v. Behrend,* 133 S.Ct. 1426, 1432 (2013).

Plaintiffs carry the burden to show the class should be certified. *See Luiken,* 705 F.3d at 372. This burden is met only if, "after a rigorous analysis," the Court is convinced the Rule 23 requirements are satisfied. *Comcast,* 133 S.Ct. at 1432 (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 341 (2011)). Rigorous analysis may further "entail some overlap with the merits of the plaintiff's underlying claim," because "[t]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982)). However, the Court's inquiry on a motion for class certification is "tentative," "preliminary," and "limited." *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1194-95 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

At the outset, Defendants contend that certification should be denied because Plaintiffs failed to submit any evidence in support of class certification and rely entirely on their Complaint. The Court rejects this argument because Plaintiffs have submitted evidence to support their class certification request. Further, there is no rule that requires admissible evidence be submitted to support a class certification motion.

While Rule 23 "does not set forth a mere pleading standard," *Comcast Corp. v. Behrend*,

133 S.Ct. 1426, 1432 (2013), there is nothing in the rule that mandates evidence must be submitted to support a request for class certification.  The Rules Enabling Act is the method for changing the Federal Rules of Civil Procedure, and the Court declines to create an evidentiary burden that is clearly not contemplated by Rule 23.  Such a significant requirement would not have been included without debate, and without any explicit reference, particularly because far more mundane things are explicitly included in the Rules.  While a plaintiff must "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)," *id.,* the operative word is "be prepared" to prove the requirements of the Rule.  It would be a leap to construe "be prepared" to mean that the party seeking class certification in fact must submit evidence and that the Court must resolve every potential evidentiary dispute before addressing the issue of class certification.

To create a rule that required evidence, much less admissible evidence, to be submitted at the class certification stage, would turn a class certification motion into something akin to a motion for summary judgment, which would be inconsistent with an expeditious resolution of class certification.  While Rule 23 was changed to say class certification motions should be resolved as early as "practicable," a full evidentiary hearing to resolve disputed issues of fact would effectively result in class certification being resolved at the same time as the merits, and only after discovery.  It would never be "practical" to resolve the issue expeditiously or early.

Such a requirement would also increase the risk for inconsistent factual findings.  For example, if in this case the Court were to find as a matter of fact that there was a policy concerning Hepatitis C drugs, and the jury later found that there was no such policy, the inconsistent factual findings would undermine confidence in the judicial process.  Our rules of

9

procedure, both modern and ancient, were designed to avoid factual inconsistencies. While the issue of subject matter and personal jurisdiction disputes might require a court to resolve facts, rarely will those issues be intertwined with the merits of the case.

Finally, it may increase the work of the parties and the court unnecessarily. A court cannot grant a motion for class certification without a rigorous analysis of each of the requirements of Rule 23. If plaintiffs are required to introduce evidence as to each Rule 23 factor, even though the dispute eventually deals with a legal question or narrow factual issue, the burden is substantially increased. Producing evidence and resolving evidentiary disputes is time consuming. That is particularly difficult at the beginning of a lawsuit when the parameters of the dispute are undeveloped. In many cases, such as the one before the Court, there is enough in the Complaint to make it plausible that the plaintiff will be able to produce evidence to prove the allegations contained in the Complaint. Requiring the plaintiff to go further and actually submit evidence and have the Court resolve any evidentiary disputes is a burden to the system without any suggestion of how the benefit outweighs that burden. There may be circumstances when a court concludes that it cannot meet its obligation to conduct a rigorous analysis without evidence or an evidentiary hearing. Such circumstances do not exist here. Therefore, the Court finds that Plaintiffs were not required to produce evidence to support their motion. Nonetheless, the Plaintiffs did produce evidence and the Court therefore turns to that evidence.[4]

---

[4] Although Plaintiffs did not initially support their motion with attached evidence, they did submit evidence in their reply brief. As a general rule, the Court does not consider arguments or evidence raised for the first time in a reply brief. *Bearden v. Lemon*, 475 F.3d 926, 930 (8th Cir. 2007). However, because the Court granted Defendants leave to file sur-replies, Defendants had an adequate opportunity to respond to this newly submitted evidence. Therefore, the Court considers this evidence in conjunction with Plaintiffs' motion rather than striking it, as Defendants suggest.

10

## C.     Rule 23(a)

### 1.     Numerosity

Rule 23(a)(1) requires that the class be sufficiently numerous such that joinder of all members would be impracticable.  In assessing whether the numerosity requirement has been met, courts examine factors such as the number of persons in the proposed class, the nature of the action, the size of the individual claims, and the inconvenience of trying individual claims. *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561 (8th Cir. 1982).  Joinder of all members may be impracticable where the class includes individuals who may become members in the future but who are currently unidentifiable.  *See, e.g., Phillips v. Joint Legis. Committee*, 637 F.2d 1014, 1022 (5th Cir. 1981) (finding that "joinder of unknown individuals is certainly impracticable").

Plaintiffs estimate that there are at least 5,000 inmates incarcerated in the MDOC and diagnosed with HCV but who have not received DAA drug treatment.  As evidence of their estimate, Plaintiffs cite a 2016 article from *The Wall Street Journal*, which estimates that there are approximately 5,146 HCV positive persons in the MDOC as of mid-2016, but less than 0.3 percent (or 18 total inmates) are receiving HCV treatment.[5]  [Doc. 132-1, p. 6 of 8].  In addition, Plaintiffs provide a medical journal article from *Health Affairs*, which is consistent with Plaintiffs' estimate.  [Doc. 132-2, p. 5 of 20 (reflecting that between 0.00 and 0.12 percent of all Missouri state prisoners with known HCV infections as of January 1, 2015 had received any treatment for HCV, according to an analysis of data from the Hepatitis C and State Prisons Survey)].  The MDOC's own documents responsive to a 2016 Sunshine Request also reflect numbers consistent with Plaintiffs' estimate, including that, as of November 2016, there were 5,200 MDOC inmates in Hepatitis C Chronic Care with only 9 of those inmates started on a

---

[5] Again, the Court rejects Defendant Corizon's unsupported assertion within a footnote that this article "does not merit consideration of class certification."  [Doc. 142, p. 7 of 16, n. 1].

Case 2:16-cv-04219-NKL   Document 174   Filed 07/26/17   Page 11 of 35

DAA drug (Harvoni or Viekira) and a total of only 12 inmates who completed a course of Harvoni or Viekira in 2016. [Doc. 132-3, p. 8-9 ("MDOC Statewide Hepatitis C Statistics 2016")].

Even with a conservative estimate, there are likely at least 2,000 members of the class: those MDOC inmates with chronic HCV who have not received DAA drug treatment.[6] Although this evidence does not establish exactly how many class members exist, Plaintiffs are not required to "specify an exact number or to prove the identity of each class member, rather, 'the plaintiffs must only show a reasonable estimate of the number of class members.'" *Halbach v. Great-West Life & Annuity Ins. Co.*, 2007 WL 1018658, at *3 (E.D. Mo. Apr. 2, 2007) (quoting *Morgan v. United Parcel Serv. of Am.*, 169 F.R.D. 349, 355 (E.D. Mo. 1996)). Here, Plaintiffs have demonstrated a reasonable estimate.

Defendants argue that Plaintiffs' evidence of numerosity would be inadmissible at trial, but the admissibility of Plaintiffs' evidence is immaterial at this stage, particularly where Defendants have not identified any contrary evidence to refute that Plaintiffs' proposed class satisfies the numerosity requirement. *See In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604, 611 (8th Cir. 2011) ("We have never required a district court to decide conclusively at the class certification stage what evidence will ultimately be admissible at trial."). Furthermore, whatever the evidentiary burden to Plaintiffs, the Eighth Circuit has made clear that this burden is something less than the presentation of trial-admissible evidence. *Id.* at 613-14 ("Because a decision to certify a class is far from a conclusive judgment on the merits of the case, it is of

---

[6] The Court arrived at this figure by applying the estimates of Defendant Corizon's own expert, Dr. Thomas Bredeman, to the approximately 5,000 MDOC inmates with HCV who are not receiving DAA drug treatment. Dr. Bredeman stated that between 50 and 80 percent of individuals infected with HCV become chronic. [Doc. 114-1, p. 2 of 9, ¶ 6]. Therefore, applying the conservative end of that estimate—50 percent—to the estimated 5,000 MDOC inmates with HCV not receiving DAA treament equates to an estimated 2,500 class members.

necessity . . . not accompanied by the traditional rules and procedure applicable to civil trials.") (internal citations and quotation marks omitted).

The inmate populations at these facilities are constantly revolving. Even with a conservative estimate of one thousand class members, the number of individual claims, as well as the inherently fluid nature of this class, would make it impracticable to require individual lawsuits. Numerosity is satisfied.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs must show that their class claims "depend upon a common contention" that "is capable of class wide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). But, commonality "'does not require that every question of law or fact be common to every member of the class . . . and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.'" *Downing v. Goldman Phipps PLLC*, 2015 WL 4255342, at *4 (E.D. Mo. July 14, 2015) (quoting *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561 (8th Cir. 1982).

In *Ebert v. General Mills, Inc.*, 823 F.3d 472 (8th Cir. 2016), the Eighth Circuit reaffirmed that "a single common question 'will do' for purposes of Rule 23(a)(2)." *Id.* at 478 (contrasting the commonality requirement with the predominance prong of Rule 23(b)(3)). Although commonality was not challenged on appeal in that environmental-contamination case, the Eighth Circuit noted in dicta that it "d[id] not necessarily disagree" with the district court's holding that the defendant's "standardized conduct of alleged contamination and the remedies

13

sought by the class [were] common to all plaintiffs" for purposes of 23(a)(2). *Id.*; *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (rejecting defendants' contention in mortgage case that, because class members had "claims of differing strengths," class failed commonality, and holding instead that because "all class members of the class [were] interested in a satisfactory common course of conduct in the future servicing of their loans," there was "declaratory and injunctive nexus . . . sufficient to establish the requisite commonality"). Therefore, even "where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation marks omitted).

Commonality is satisfied here. Plaintiffs seek class certification of whether Defendants' policy of withholding HCV treatment, including DAA drugs, violates the Americans with Disabilities Act and the Eighth Amendment. To prove their ADA claim, Plaintiffs must show (1) that they have a disability as defined by statute; (2) that they are otherwise qualified for the benefit in question—treatment for their HCV; and (3) that they were excluded from the benefit because of discrimination based upon their disability. *See* 42 U.S.C. § 12131 *et seq.; Randolph v. Rodgers,* 170 F.3d 850, 857 (8th Cir. 1999). As to Plaintiffs' Eighth Amendment claim, they must show that Defendants "act[] with deliberate indifference to the prisoner's serious medical needs." *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104) (1976)). Specifically, Plaintiffs must show (1) that they have an objectively serious medical need and (2) that prison officials subjectively know of, but deliberately disregard, that need through the HCV treatment policies and practices alleged by Plaintiffs. *Dulaney v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "A plaintiff can show deliberate indifference in the level of care provided in different ways, including by showing grossly

incompetent or inadequate care," *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990), showing a defendant's decision to take an easier and less efficacious course of treatment, *id.*, or showing a defendant intentionally delayed or denied access to medical care, *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002)." *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015). In addition, "[i]n institutional level challenges to prison health care such as this one, systemic deficiencies can provide the basis for a finding of deliberate indifference." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). For example, "[d]eliberate indifference to inmates' health needs may be shown . . . by proving that there are 'such systemic and gross deficiencies in . . . procedures that the inmate population is effectively denied access to adequate medical care.'" *Id.* In addition, "a series of incidents closely related in time may disclose a pattern of conduct amounting to deliberate indifference." *Id.* (internal quotations omitted). Further, "[r]epeated examples of delayed or denied medical care may indicate a deliberate indifference by prison authorities to the suffering that results." *Id.*

Both of these claims necessarily involve common questions. For instance, as to the Eighth Amendment claim, all class members share the common question of whether the Defendants' policy or custom of withholding treatment with DAA drugs from individuals who have been or will be diagnosed with chronic HCV constitutes deliberate indifference to a serious medical need. As to the ADA claim, all class members share the common mixed factual and legal question of whether Defendants use the alleged policies to discriminate against inmates in need of medical treatment based on their chronic HCV diagnoses. Defendant MDOC briefly contends that because Plaintiffs challenge medical treatment decisions, they have failed to state a

claim under the ADA.[7] [Doc. 113, p. 22 of 25]. The Court rejects this argument as going only to the merits of the ADA claim, not to the requirements of Rule 23. *See, e.g., Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 133 S.Ct. 1184, 1194-95 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.") The Court is satisfied that the commonality requirement is met because the alleged HCV-treatment policies or customs are the "glue" that holds together the putative class; either these policies are unlawful as to all inmates or they are not. *See Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014).

The Court is not persuaded by Defendants' interpretation of *Wal-Mart v. Dukes*, 564 U.S. 338 (2011), as prohibiting class certification in this case. Specifically, Defendants contend that *Wal-Mart* prevents Plaintiffs from showing that the requisite "common answer" exists to satisfy commonality because the treatment of HCV inmates is "highly individualized." In support, Defendants emphasize that DAA medications are not recommended for everyone and that the Named Plaintiffs, alone, allege different symptoms and conditions, as well as different treating physicians and healthcare providers. However, Defendants' argument depends on their contention that inmate medical decisions *always* involve individualized treatment decisions that are, by their very nature, unsuitable for class treatment even when all are attributable to an overarching policy or protocol. The Court rejects this theory, which "amounts to a sweeping assertion that, after *Wal-Mart*, Eighth Amendment claims can never be brought in the form of a class action." *Parsons v. Ryan*, 754 F.3d 657, 675-76 (9th Cir. 2014).

---

[7] Defendant MDOC also states without support that the circumstances giving rise to each class member's purported claim of discrimination are "unique," defeating commonality. [Doc. 113, p. 22 of 25]. The Court rejects this argument for the same reasons that it rejects this argument as to Plaintiffs' Eighth Amendment class claim: Plaintiffs are alleging a discriminatory *policy* that is applied to all class members, not individualized acts of discrimination. *See also infra*, p. 19-20.

Furthermore, a comparison of *Wal-Mart* to this case supports class certification, rather than undermines it. *Wal-Mart* clarified that class certification is appropriate only where the plaintiffs' claims rest on a "common contention" whose "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. *Wal-Mart* concluded that a proposed Title VII class of millions of female employees, challenging discretionary decisions made by managers in 3,400 stores across the country, did not satisfy Rule 23's commonality requirement. *Id.* at 350-61. The *Wal-Mart* court reasoned that the plaintiffs, who alleged a general corporate policy of allowing discretion by local managers, lacked "a common answer to the crucial question *why was I disfavored*." *Id.* at 352. It concluded that the plaintiffs' effort to "sue about literally millions of employment decisions at once" did not satisfy commonality because "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's." *Id.* at 355-56.

Unlike in *Wal-Mart*, where the plaintiffs failed to identify "a common mode of exercising *discretion* that pervades the entire company," the policies alleged by Plaintiffs in this case *prevent* individual treaters from using their discretion to make appropriately individualized treatment decisions. Moreover, to the extent that treaters do use their discretion in denying DAA drug treatment to inmates with chronic HCV, unlike in *Wal-Mart*, Plaintiffs in this case have identified "a common mode of exercising [that] discretion": in the form of policies applied to all inmates with chronic HCV, *e.g.*, not considering DAA drug treatment unless and until an inmate's APRI score is above 2.0 for several months.

In contrast to Defendants' characterizations, Plaintiffs are not merely aggregating many claims of *individual* mistreatment. Instead, they are alleging that the policies and practices in place for HCV treatment generally expose all inmates with chronic HCV to a substantial risk of

serious harm in violation of the Eighth Amendment.  In other words, the unconstitutional treatment decisions alleged by Plaintiffs are attributable to an overarching policy to which all class members are exposed, satisfying the commonality requirement.  To be sure, there may be variance in symptoms, contraindications for treatment, and differing levels of physical health from inmate to inmate, but "every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide [MDOC] policy or practice that creates a substantial risk of serious harm," despite the fact that "a presently existing risk may ultimately result in different future harm for different inmates ranging from no harm at all to death."  *See Parsons v. Ryan*, 754 F.3d 657, 679 (9th Cir. 2014) (citing *Farmer*, 511 U.S. at 834 and *Helling*, 509 U.S. at 33).[8] In this case, the putative class sets forth a common contention whose truth or falsity can be determined in one stroke: whether the specified policies and practices to which they are all subjected by Defendants constitute constitutionally adequate or inadequate care.

Next, Defendants argue commonality is lacking by mischaracterizing Plaintiffs' proposed class as "rely[ing] upon a false assumption: that *every* inmate with HCV should receive DAA medications."[9]  [Doc. 114, p. 16 of 28].  But this is not the case.  Instead, the assumption underlying Plaintiffs' class is that Defendants' systematic policies or customs related to HCV treatment, which are applied to all class members, are constitutionally inadequate.  These alleged policies include:

(1) "using an APRI score—which measures the progression of fibrosis or cirrhosis—to determine whether a person should be treated";

---

[8] The Court also rejects Defendant MDOC's contention that *Parsons* somehow "erroneously departs from long-standing Eighth Amendment precedent."  [Doc. 142, p. 11 of 16].

[9] Furthermore, although Defendants acknowledge that "DAA medications are appropriate for some," they do not challenge Plaintiffs' allegation that Defendants have provided DAA medications to less than one-half of one percent of inmates in their custody with a known HCV infection.  When a defendant makes the same decision for the same reason as to 99 percent of a group of thousands of people, that *is* a common policy that should be litigated at one time.

(2) "not undertaking liver biopsies, FIB-4, FibroScan, or any other methods of determining the stage of fibrosis or cirrhosis and relying exclusively on APRI score to determine that stage";

(3) "failing to even consider providing treatment to HCV-positive inmates unless they have an APRI score above 2.0 that persists for several months, even though more than half of persons with cirrhosis will not have an APRI score at or above 2.0 and they know that AST levels are transient in contravention of the prevailing standard of care and in deliberate indifference to serious medical need";

(4) "disregarding independent diagnoses of cirrhosis or significant hepatitis fibrosis in making treatment decisions"; and

(5) "basing treatment decisions on cost, rather than on need for treatment."

[Doc. 30, p. 18-19]. Such policy-based claims will lead to common answers, as required for commonality, including potentially enjoining Defendants from delaying treatment with a DAA drug to the class members for any nonmedical reason or enjoining Defendants to revise their treatment policies so that they comply with the standard of care. [Doc. 132, p. 17 of 28].

As a separate argument, Defendants again argue that Plaintiffs have not carried their burden of proving by a "preponderance of the evidence" that Defendants adopted any systemwide policy of withholding treatment with DAA medications. As already discussed, the Eighth Circuit has never articulated a particular evidentiary burden, much less a "preponderance of the evidence" standard. Rather, to establish Rule 23(a)(2)'s commonality requirement, the Supreme Court has described Plaintiffs' burden as requiring Plaintiffs to "be prepared to prove that there are *in fact* sufficiently . . . common questions of law or fact." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013). As discussed above, Plaintiffs' uncontroverted allegations alone satisfy this burden because Defendants have failed to challenge the common questions set forth by Plaintiffs.

Still, to the extent that any question arguably remains about the existence of standardized

conduct common to all class members, Plaintiffs have submitted supportive evidence, including grievance and informal resolution request ("IRR") responses to inmates' requests for DAA treatment.  [Doc. 132-6].  These IRR responses repeatedly acknowledge the existence and nature of some of the policies Plaintiffs set forth in their Complaint, which Defendants appear to rely upon to deny treatment.  [*Id.*].  For example, the Informal Resolution Request Response dated October 27, 2016 provides:

> Your concern is understood to be: you would like your hepatitis treated "before it gets worse. . . . [Y]ou were seen by the medical provider . . . At that time your score did not indicate that you qualified for the treatment.

[Doc. 132-6, p. 1].  Another IRR similarly provides, "[Y]our APRI score is 0.314.  APRI scores higher than 2 are being considered for Hepatitis C treatment.  At this time you do not meet criteria for treatment.  You will continue to [be][sic] monitored in infectious disease clinic for your Hepatitis C."  [*Id.* at p. 2].  Another provides, "You do not currently meet the criteria for Harvoni treatment.  You are enrolled in chronic care for your condition and your lab levels are monitored and you are seen by a medical provider every 6 months."  [*Id.* at p. 3].  Another provides, "The results of your test noted that your APRI score does not support treatment at this time."  [*Id.* at p. 5].  Another IRR directed to Plaintiff Chris Baker, whose severe cirrhosis was independently diagnosed prior to incarceration through a liver biopsy, responds, "Your APRI score is 0.562 and per protocol the APRI score needs to be greater than 2 to be considered for treatment."  [*Id.* at p. 6].  Although not required, this evidence further buttresses Plaintiffs' commonality argument by showing that Defendants do *in fact* have a policy or custom—not considering DAA treatment without an "adequate" APRI score greater than 2—that does not require individualized determinations and is applied to inmates with chronic HCV.  Defendants

20

have not identified any evidence to the contrary.[10]

As an additional argument against commonality, Defendants repeatedly emphasize the "individual" circumstances that must be considered to determine whether DAA drug treatment is appropriate for an HCV-positive inmate. As identified by Defendants, these considerations include that people with acute HCV should not receive DAA treatment because they may self-resolve;[11] some persons may be allergic to or have significant drug interactions with the components of the treatment; pregnant patients or patients who lack sufficient time in their sentence should not receive it; and patients who do not demonstrate a willingness to adhere to the treatment regimen and abstain from high-risk activities should not receive it. [Doc. 114, p. 10-11 (citing Dr. Bredeman's affidavit)]. However, the reality that DAA drug treatment may not be appropriate for *every* inmate diagnosed with chronic HCV does nothing to undermine the existence of the common questions alleged by Plaintiffs and discussed previously. The Court recognizes that some members of the class may not be good candidates for DAA drug treatment based on individual characteristics and contraindications. Nonetheless, at least one common question remains: whether Defendants' classwide policy of not even considering DAA drug treatment in the first place unless an inmate has an "adequate" APRI score is lawful or unlawful.

For the previous reasons, the Court finds that Plaintiffs' putative class satisfies the commonality requirement.

_____

[10] Even if Defendants had identified evidence to the contrary, Plaintiffs also allege that Defendants' written policies are, in practice, aspirational: that Defendants deviate from their written HCV protocols for the purpose of delaying and denying treatment even to persons who might qualify for treatment. Indeed, it is difficult for the Court to believe that less than one half of one percent of HCV-positive inmates—the percentage who have received DAA treatment— have an APRI score of more than 2 when the overall rate of cirrhosis among HCV-positive persons is alleged to be somewhere in the range of 20 percent. [Doc. 132-7 ("CDC Fact Sheet")].

[11] Furthermore, this contraindication is not relevant to Plaintiffs' class, which is limited to only those inmates with *chronic* HCV, not acute HCV.

### 3.  Typicality

The typicality requirement is met when the claims or defenses of the representative party are typical of those of the class.  Fed. R. Civ. P. 23(a)(3).  The requirement "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995).  In determining typicality, courts consider whether the named plaintiff's claim "arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir. 1996).

The Named Plaintiffs' claims and the claims of the remainder of the putative class arise from the same course of conduct: Defendants' policies surrounding their treatment of inmates with chronic HCV, including their policy of denying DAA drug treatment to individuals with HCV due to APRI score.  Plaintiffs allege these policies are discriminatory based on HCV status and are violative of their Eighth Amendment rights.  These claims are identical to the claims that could be raised by any member of the class.  In addition, all putative class members share a common injury of having these policies applied to them and as a result, suffering a significant risk of harm.  Therefore, the Named Plaintiffs are typical because they, too, are exposed to the same risk.  Like the remainder of the class, they are HCV-positive inmates to which the alleged policy has been applied and who have not been treated with DAA drugs.  *See Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (holding that typicality means that there are "other members of the class who have the same or similar grievances as the plaintiff" and that "[f]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory").

Case 2:16-cv-04219-NKL   Document 174   Filed 07/26/17   Page 22 of 35

Defendants argue that there is no typicality because Plaintiffs have not offered evidence "of their alleged entitlement to such medications" or "that they themselves were injured" because of their failure to receive DAA medications. [Doc. 114, p. 19 of 28]. First, the Court has already rejected Defendants' arguments as to Plaintiffs' evidentiary burden for proving the Rule 23(a) requirements. Furthermore, Defendants' own evidence buttresses Plaintiffs' typicality because this evidence confirms Plaintiffs' allegations that (1) they have been diagnosed with chronic HCV and (2) they have not been treated with DAA drugs. *See, e.g.*, [Docs. 114-3, 114-4, and 114-5 (Medical Records for Postawko, Baker, and Jamerson)]. Second, the typicality inquiry does not require Plaintiffs to show "their alleged entitlement" to DAA drugs or that they, themselves, were injured. Instead, such inquiries are relevant only to the merits of Plaintiffs' claims and cannot be resolved at the class certification stage. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 821 (8th Cir. 2015) (reversing district court and holding that even where named plaintiffs were potentially subject to defense, because that defense was a "critical issue in this case," their claims were typical); *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005) (holding, as to Rule 23(b)(3), that "disputes may be resolved only insofar as resolution is necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case for the class" and that "[t]he closer any dispute at the class certification stage comes to the heart of the claim, the more cautious the court should be in ensuring that it must be resolved in order to determine the nature of the evidence the plaintiff would require").

Next, Defendants argue there is no typicality by again contending that Plaintiffs' claims turn on individualized medical treatment decisions, an argument this Court has already rejected. The Court further rejects Defendants' arguments that Plaintiffs "will require individualized proof

by expert testimony" of "[t]he *effect* that a lack of DAA medications has had on them." [Doc. 114, p. 20-21 of 28 (emphasis added)]. Individualized proof and analysis might be required if Plaintiffs were seeking money damages for their particular injuries caused by Defendants' policies and customs, including the denial of DAA treatment. However, in this case, Plaintiffs do not seek classwide monetary relief. Instead, they seek injunctive and declaratory relief regarding Defendants' policies and practices that are applicable to *all* inmates with chronic HCV and thus, do not require individualized proof by expert testimony.

Although Defendants also cite a number of HCV inmate cases, none of these cases demonstrate that the Named Plaintiffs are atypical. *See also Graham v. Parker*, 2017 WL 1737871, at *1 (M.D. Tenn. May 4, 2017) (certifying Rule 23(b)(2) class of Tennessee inmates with Hepatitis C with similar Eighth Amendment class claim). Not only do Defendants' cases not involve motions for class certification, but they also predate the FDA's approval of DAA drugs when the medical standard of care was different than the one applicable to Plaintiffs' claims. Prior to DAA drugs, there was *no* effective and safe treatment for HCV; the standard treatment, which included the use of interferon and ribavirin medications, failed to cure most patients; and this treatment was associated with severe side effects and contraindications, including psychiatric and autoimmune disorders. *See* [Doc. 114, p. 21 of 28, n. 9 (citing cases prior to approval of DAA drugs that do not involve class certification)]. Therefore, to the extent that Defendants contend these cases somehow demonstrate the Named Plaintiffs are not typical of the class, these cases are also distinguishable.

For the previous reasons, Plaintiffs' claims are typical of the claims of the class.

### 4. Adequacy

Rule 23(a)(4) requires that the class representative and class counsel will "fairly and

adequately protect the interests of the class." The adequacy requirement is met where: "(1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Carpe v. Aquila, Inc.,* 224 F.R.D. 454, 458 (W.D.Mo. 2004) (internal quotes omitted). This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625 (1997).

First, Defendants do not dispute that Plaintiffs' counsel can adequately represent the putative class members. The proposed class counsel has extensive experience prosecuting complex litigation. One attorney has significant experience as class counsel in civil rights class actions seeking prospective relief, and the remaining two attorneys have experience litigating complex civil rights matters in federal court, including prisoners' rights cases. The proposed class counsel will vigorously represent the plaintiffs in this action.

In addition, Defendants do not dispute that Plaintiffs have common interests with the putative class—namely, getting prompt, medically appropriate consideration for treatment with a DAA drug. Contrary to Defendants' contentions, a named plaintiff's individual claim for individual damages does not disqualify that named plaintiff from being an adequate class representative. *See Stewart v. Winter*, 669 F.2d 328, 334-335 (5th Cir. 1982) ("An individual claim for large damages does not necessarily make a putative representative's interests 'antagonistic' to those of the class; to the contrary, the courts have often viewed the assertion of such a claim as an indication that the representative will prosecute the action vigorously."). Aside from raising the Named Plaintiffs' individual monetary claims as a "potential conflict," Defendants have not identified anything "in the record to indicate that [their] claims for

damages are in any way 'antagonistic' to the class claims for injunctive relief." *Id.* The Court is satisfied that the Named Plaintiffs' interests are aligned with those of the class because as discussed above, their claims arise out of the same common course of conduct and are based upon the same legal theories as the class members' claims. *See Wal-Mart v. Dukes*, 564 U.S. 338, 349, n. 5 (2011) (noting that the two requirements of typicality and adequacy "tend to merge"). The adequacy requirement is satisfied.

### D. Rule 23(b)(2)

To certify the class, Plaintiffs must further prove satisfaction of the Rule 23(b)(2) requirements: that the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Although a Rule 23(b)(2) class is not required to satisfy the additional predominance and superiority requirements of Rule 23(b)(3), "the class claims must be cohesive." *Ebert v. General Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016) (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998). For purposes of 23(b)(2), cohesiveness requires that "the relief sought must perforce affect the entire class at once." *Id.* In contrast, cohesiveness is lacking where "each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.* at 480-81.

The Court finds that the putative class satisfies Rule 23(b)(2) because Defendants' policies apply generally to the class so that the requested injunctive and declaratory relief would provide relief to all class members. As discussed previously, Plaintiffs challenge policies and practices through which Defendants have acted or refused to act on grounds that apply generally to all inmates with chronic HCV. The existence of at least one policy or custom—refusing to

even consider DAA treatment for an inmate without an "adequate" APRI score greater than 2—was additionally supported with evidence, including grievance and informal resolution request responses to various inmates' requests for DAA treatment. *See supra* Section II.C.2. p. 20-21 and [Doc. 132-6]. Rather than controverting the existence of these classwide policies, Defendant Corizon's own evidence confirms their existence, including referencing standardized "protocols" relied upon by Corizon for the management and treatment of chronic HCV. *See, e.g.*, [Doc. 114, p. 9 of 28 (citing Dr. Bredeman's affidavit)]. Although Corizon's expert[12] states that HCV medication decisions are based upon the individual patient's medical need and made on a "case-by-case basis," Corizon does not identify any specific evidence contradicting the existence of the HCV-treatment policies alleged by Plaintiffs. These systemwide policies preclude all class members from even being considered for DAA treatment without the requisite APRI score, which, in turn, prevents treaters from making "case-by-case" DAA decisions based on individual criteria because the policies do not permit DAA consideration in the first place.

As required for cohesiveness, all class members seek precisely the same declaratory and injunctive relief. They seek a declaratory judgment that Defendants' current "policy of withholding treatment with DAA drugs from inmates diagnosed with [chronic] HCV violates the Eighth and Fourteenth Amendments." As to injunctive relief, they seek to enjoin Defendants:

(1) to formulate and implement an HCV treatment policy that meets the prevailing standard of care, including identifying persons with HCV;

(2) to provide members of the class an appropriate and accurate assessment of the level of fibrosis or cirrhosis they have, counseling on drug-drug interactions, and ongoing medical care for complications and symptoms of HCV; and

---

[12] Plaintiffs also submitted their own expert affidavit, which Corizon challenged under *Daubert*. [Doc. 132-5 ("Declaration of Dr. Blair Thedinger")]. However, even to the extent that Corizon's *Daubert* challenge is valid, the Court need not address it because the Court found Plaintiffs' affidavit unnecessary for deciding the current motion.

(3)  from delaying or denying DAA drug treatment to class members for any nonmedical reason.[13]

[Docs. 30, p. 25 and 27 ¶¶ 136, 144 (Second Amended Complaint) and Doc. 132, p. 17 of 28 (Plaintiffs' Reply Suggestions describing the injunctive relief the Court could give as "includ[ing] enjoining Defendants from delaying treatment with a DAA drug to the putative Class members for any nonmedical reason")].  Therefore, if Plaintiffs are successful, "a single injunction or declaratory judgment would provide relief to each member of the class" because it would address the HCV treatment policies that apply generally to *all* class members.  *Ebert v. General Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016) (quoting *Wal-Mart v. Dukes*, 564 U.S. 338 (2011)).

The Court is not persuaded by Defendant Corizon's reliance on an environmental-contamination case, *Ebert v. General Mills, Inc.*, 823 F.3d 472 (8th Cir. 2016), to argue that Plaintiffs fail to satisfy the cohesiveness requirement.  *See id.* at 480–81 (discussing "stringent" cohesiveness standard).  In *Ebert*, neighborhood property owners sued General Mills for remediation for dumping toxic waste and exposing their neighborhood to toxic vapors.  *Id.* at 474.  The Eighth Circuit held that the class of property owners was not cohesive because the remediation sought was "not even universal" and remediation, if awarded, would have been "unique" to "each of the affected properties."  *Id.* at 480-81.  Indeed, some of the class members had already received vapor migration systems customized to their properties and some had not; some members' properties had been tested and no vapors were detectible; and of those homes affected by the vapors, their test results showed "widely varying levels."  *Id.* at 481. Further, because the class sought "hybrid certification" with (b)(2) and (b)(3) classes, there were "myriad

---

[13] The Court's Order granting class certification is based on the equitable relief discussed herein. To the extent that Plaintiffs seek an alternative injunctive remedy, the motion for class certification may be reconsidered.

considerations" about the individual proof needed to show causation and damages for each class member. *Id.* at 481; *see also id.* at 479–80.

The case before this Court is different. There is a straightforward causal relationship between Defendants' policies relating to HCV medical care and the putative class members' lack of treatment and exposure to substantial risk. In contrast to *Ebert*, there are no classwide issues relating to damages because the class seeks only equitable relief. Also unlike the *Ebert* plaintiff class where some properties had been fully or partially remediated so that class members sought different levels of remediation relief, none of the members of the proposed class in this case has received treatment with any DAA drug. As a result, the plaintiffs in this class are not seeking differing levels of injunctive relief, as they were in *Ebert*.

Defendants again argue that the Eighth Amendment claim central to this case requires individualized inquiries with respect to every class member, making it impermissible under Rule 23(b)(2). Defendants contend that the proof for Plaintiffs' claims rests on whether each individual class member's treatment was constitutionally inadequate. Again, according to this logic, class certification would never be appropriate for Eighth Amendment claims, a sweeping conclusion that this and other courts have long rejected. *See, e.g., Graham v. Parker*, 2017 WL 1737871, *1 (M.D. Tenn. May 4, 2017) (certifying Rule 23(b)(2) inmate class against state prison for Eighth Amendment claims based on the prison's allegedly unconstitutional treatment protocols, policies, and practices regarding HCV treatment); *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) (affirming district court's certification of Rule 23(b)(2) inmate class against state prison for Eighth Amendment claims based on allegedly serious systemic deficiencies in conditions of confinement in isolation cells and in the provision of privatized medical, dental, and mental health care services).

Case 2:16-cv-04219-NKL   Document 174   Filed 07/26/17   Page 29 of 35

According to Defendants, the inquiry is individualized because not every inmate with HCV will go on to develop serious complications from HCV, and not every inmate will be an appropriate candidate for DAA drug treatment. However, such arguments repeatedly misconstrue Plaintiffs' class claims as demands for *individual* treatment dependent on individualized factors. *See, e.g.*, [Doc. 113, p. 10-12 of 25]. As the Court has already explained in analyzing and rejecting Defendants' similar arguments against commonality, Plaintiffs are not seeking adjudication of demands for particular individualized treatment. Instead, the challenge they are actually bringing—to customs or policies dictating the way that the entire putative class's chronic HCV is treated generally—is well recognized. Indeed, a case like this one in which a group of prisoners seeks to challenge the constitutionality of a prison policy is so well suited for Rule 23(b)(2) class treatment that the leading class-action and federal-practice treatises both use it as the exemplar of a case fitting within that subsection: "For example, if a prisoner in a prison conditions lawsuit secures a ruling that a prison policy violates the Constitution, the court-ordered injunctive relief will necessarily apply to all other prisoners." 1 H. Newberg & A. Conte, Newberg on Class Actions § 4.34 (5th ed. 2016 update); *see also* Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1776 (3d ed. 2017 update) ("[I]t should be noted that a common use of Rule 23(b)(2) is in prisoner actions brought to challenge various practices or rules in the prisons on the ground that they violate the constitution. For example, Rule 23(b)(2) class actions have been utilized to challenge prison policies or procedures alleged to . . . violate the prisoners' Eighth Amendment rights to be free from cruel and unusual punishment.").

Defendants' reliance on *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010) to show that Plaintiffs' Eighth Amendment claim cannot be certified does not require a different result. In *Avritt*, purchasers of annuities alleged that the seller engaged in unfair business

30

practices by systematically crediting higher interest to the most recent deposits in customers' annuity accounts and crediting lower interest to older deposits. The Eighth Circuit found the case to be inappropriate for injunctive or declaratory relief under Rule 23(b)(2) because the plaintiffs conceded that the case was primarily about money damages, and "the level of disclosure—as well as the extent of each individual's reliance—varied between plaintiffs." *Id.* at 1036. Accordingly, the Eighth Circuit reasoned, injunctive or declaratory relief would be inappropriate because resolution of the plaintiffs' claims would require numerous individual determinations regarding the defendant's representations and each purchaser's reliance. *Id.*

The Eighth Amendment claim in this case is different from the claims in *Avritt*. Unlike in *Avritt*, the plaintiff class in this case does not even seek monetary relief, and members of the class are not required to prove individualized elements, such as their individual reliance on a particular representation made, as in *Avritt*. In fact, this case is more comparable to *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995), also cited by Defendants. In *DeBoer*, the Eighth Circuit approved a class action settlement under Rule 23(b)(2) where the plaintiffs were mortgagees seeking to enjoin a mortgage servicer from requiring them to maintain unreasonably high balances in an escrow account. *Id.* at 1175. The *DeBoer* mortgage servicer's liability turned on a single question that uniformly applied to all class members: whether the mortgage servicer was required to use aggregate or individual-item accounting in determining the amount of money to hold in an escrow account. *Id.* at 1173. Resolution of that question as to one of the plaintiffs necessarily resolved the issue for the entire class. In the same way, Defendants' liability in this case turns on a single question that uniformly applies to all class members: whether Defendants' policies for diagnosing and treating inmates with chronic HCV, including refusing to consider DAA drug treatment based on APRI score, constitute constitutionally

31

adequate or inadequate care in violation of the Eighth Amendment. As in *DeBoer*, the central issue in this case is one that can be decided uniformly with respect to all plaintiffs.

The Court is also not persuaded by Defendants' contention that certifying Plaintiffs' class would force them to adopt a "one-size-fits-all policy" for treating inmates with HCV. Rather, a finding of liability may instead force MDOC to revise what is *already* alleged to be a one-size-fits-all policy to reflect the current medical standard of care. These revisions could include requiring Defendants to individually consider class members for DAA treatment rather than, as a matter of policy, denying this treatment exclusively based on APRI score or for nonmedical reasons such as cost.

As a separate argument against cohesiveness, Defendant MDOC quotes *Elizabeth M. v. Montenez*, 458 F.3d 779 (8th Cir. 2006), to "caution" the Court to be "mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Id.* at 784. Although Defendant MDOC cites to *Elizabeth M.* while emphasizing the potential financial cost of treating putative class members with DAA drugs, the cost of the class's requested relief was never considered or discussed by the *Elizabeth M.* court, nor is cost a factor requiring consideration under Rule 23.

In *Elizabeth M.*, the Eighth Circuit vacated the district court's certification of an unwieldy class of patients at three state mental health facilities due to the named plaintiffs' lack of standing and the class definition's inclusion of both current and former patients. Unlike the case before this Court, the *Elizabeth M.* class brought numerous claims and sought "sweeping injunctive relief," which "would require the district court to mandate and monitor detailed programs governing *nearly every facet of the State's operation* of the three facilities—patient risk assessment, placement, and discipline; staff leadership structure; prehire procedures and

32

training for staff; sex education;" and more. *Id.* at 783-84 (emphasis added). Defendant MDOC appears to cite *Elizabeth M.* for its contention that certifying Plaintiffs' class would produce such sweeping financial implications that there must be a clear showing that the Rule 23 requirements have been met. However, the Court does not disagree with this principle, a principle that is unrelated to the financial implications of a putative class's requested injunctive relief. Rather, every motion for class certification requires the Court to conduct a "rigorous analysis," which this Court has undertaken. *See id.* at 784.

Defendants next contend that because the Named Plaintiffs bring individual claims for monetary damages, *Wal-Mart v. Dukes* precludes certification under Rule 23(b)(2). The Court rejects this argument as a misinterpretation of *Wal-Mart*, which did not hold that a plaintiff's *individual* claim for damages separate from the claims of the class somehow defeats certification under Rule 23(b)(2).[14] *See Wal-Mart v. Dukes*, 564 U.S. 338 (2011). Furthermore, the Eighth Circuit in *Ebert* contradicted this argument by implication because it observed that a court may bifurcate a class action into two phases, insulating the (b)(2) class from the money damage portion of the case in a (b)(3) class. Defendant's citation to *Rouse v. Caruso*, 2013 WL 588916, at *5 (E.D. Mich. Jan. 7, 2013), also does not require a different result because *Rouse* involved a (b)(2) injunctive relief class claim for compensatory damages of $10 million dollars. Unlike *Rouse*, Plaintiffs' class claims do not seek any monetary damages.

Defendants' remaining arguments, some of which are mischaracterized as demonstrating that the class is "overbroad," are again merits arguments not relevant to class certification: that Plaintiffs have not established that everyone with HCV actually "needs" DAA drug treatment or

---

[14] In addition, it would be unreasonable to interpret *Wal-Mart* as holding that if individual class members *could* make claims for monetary damages, then the class could not be certified under Rule 23(b)(2) because such an interpretation would preclude the vast majority of Rule 23(b)(2) classes.

Case 2:16-cv-04219-NKL   Document 174   Filed 07/26/17   Page 33 of 35

that all patients diagnosed with HCV have suffered an injury due to Defendants' policies. These are not the issues presented at the class certification stage. The cases that Defendants cite relate to summary judgment motions or cases in which the courts reached the merits of the plaintiffs' claims—whether the defendants were deliberately indifferent to an inmate's particular medical needs and whether certain treatments were warranted. Again, Plaintiffs are not challenging individualized treatment decisions related to their own unique characteristics or contraindications. Rather, they are challenging Defendants' systemwide policies of denying consideration for DAA drug treatment based on allegedly arbitrary and/or nonmedical reasons, and these policies apply generally to all members of the class. Plaintiffs are not merely disagreeing with a doctor's course of treatment or medical decision as to a particular person. They are attacking the constitutionality of Defendants' MDOC-wide policies and procedures applicable to all inmates with chronic HCV.

Regardless, such arguments are premature. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974). Arguments about the appropriateness of certain treatments or how these policies are, in fact, applied to class members may be relevant to a future motion for summary judgment or at trial. But, these arguments have no impact on the availability of class certification, as they do not go to the Rule 23(b)(2) inquiry or establish that the class is somehow overbroad.

For the previous reasons, the putative class is appropriate for certification under Rule 23(b)(2).

**III.    Conclusion**

Plaintiffs' motion for class certification, Doc. 77, is granted, and the class is defined as discussed above.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  July 26, 2017
Jefferson City, Missouri