# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| MICHAEL POSTAWKO, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 16-CV-4219-NKL |
| | ) |
| MISSOURI DEPARTMENT OF | ) |
| CORRECTIONS, et al., | ) |
| | ) |
| Defendants. | ) |

### SECOND AMENDED NOTICE OF RULE 30(B)(6) DEPOSITION
### OF DEFENDANT CORIZON, LLC

**PLEASE TAKE NOTICE** that, pursuant to Fed. R. Civ. P. 30(b)(6), the undersigned will take the deposition upon oral examination of defendant Corizon LLC ("Corizon") through its following designees whom Corizon has identified as most knowledgeable and prepared to testify on behalf of Corizon concerning the below subject matters, on the following dates and times:

1. **Dr. Jerry Lovelace, December 11, 2019, commencing at 8:00 a.m.**, at the office of the Missouri Attorney General, located at 221 West High Street, Jefferson City, Missouri, or at some other mutually acceptable location;

2. **Jason Terris, December 11, 2019, commencing at 2:00 p.m.**, at the office of the Missouri Attorney General, located at 221 West High Street, Jefferson City, Missouri, or at some other mutually acceptable location;

3. **Tonya Mooningham, December 19, 2019, commencing at 8:00 a.m.**, at the law offices of Maynard, Cooper & Gale, 3835 Cleghorn Avenue, Suite 250, Nashville, Tennessee, or at some other mutually acceptable location; and

1

4. **Dr. Pete Powell, December 19, 2019, commencing at 2:00 p.m.**, at the law offices of Maynard, Cooper & Gale, 3835 Cleghorn Avenue, Suite 250, Nashville, Tennessee, or at some other mutually acceptable location.

These depositions will take place before a person authorized by law to administer oaths, and will continue from day to day, excluding Sundays and court-recognized holidays, until the examination is completed. The depositions will be recorded via stenographic and videographic means. Pursuant to L.R. 30.1(c)(1), the address and employer of the recording technician or technicians is as follows:

Pohlman Reporting Company LLC
10 South Broadway, Suite 1400
St. Louis, MO 63102

## Definitions

Unless otherwise defined herein, terms shall have the meanings assigned to them in Plaintiffs' First Set of Requests for Production to Defendant Corizon, LLC. In addition, for purposes of this notice of deposition and the request for production set forth below, the following definitions apply:

(a) The terms "DAA drugs" and "DAAs" shall mean direct-acting antiviral drugs approved for HCV, including but not limited to Harvoni, Viekira Pak, Technivie, Vosevi, Epclusa, Mavyret, Sovalidi, Vosevi, Daklinza, and/or Zepatier.

(b) The term "HCV" shall refer to a patient's infection with the Hepatitis C Virus, active or inactive, and no matter when exposed or how long infected.

(c) The terms "chronic Hepatitis C" and "chronic HCV" shall refer to the infection of a patient who has been infected with HCV for six months or longer.

2

## Subject Matter for Examination

You are requested to identify one or more officers, directors, or managing agents, or designate other persons who consent to testify on Corizon's behalf regarding information known or reasonably available to Corizon, with respect to the following subject matter:

1. The factual basis for Corizon's Answer to the allegations in Plaintiffs' Second Amended Complaint;

2. The factual basis for Corizon's Affirmative Defenses to the allegations in Plaintiffs' Second Amended Complaint;

3. Any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment;

4. Corizon's Initial Disclosures Pursuant to Rule 26(a)(1) in this matter, served on March 31, 2017;

5. Corizon's initial and supplemental responses to Plaintiffs' First, Second, and Third Sets of Interrogatories, and Plaintiffs' First, Second, Third, Fourth, and Fifth Sets of Requests for Production (collectively, the "Discovery Responses") in this matter;

6. Corizon's policies and procedures, formal and informal, written and otherwise, and practices, from January 1, 2014 through present related to screening, testing, diagnosing, and counseling or education of inmates with HCV, and for determining whether and under what circumstances to provide DAA treatment to inmates with HCV, and for monitoring inmates for HCV-related symptoms and/or complications, including but not limited to:

    (a) HCV treatment protocols, Chronic Care Clinic protocols, and Nursing Chronic Care protocols, Bates labeled Corizon 0001-0078;

    (b) "Hepatitis C Checklist," Bates labeled Corizon 6401-6402;

(c) Corizon Health Interim Policy and Practice Guidelines for the Treatment of Hepatitis C Virus, Bates labeled MDOC 09280-81;

(d) Corizon's "Priorities for Treatment," Bates labeled Corizon 8718-19;

(e) "Prioritization for Treatment," Bates labeled Corizon 8733-36;

(f) Corizon Dec. 2018 HCV Pathways, Bates labeled Corizon 9195-9211; and

(g) Corizon "Hepatitis C: Nurse Chronic Care Protocol," Bates labeled Corizon 9212-13.

(h) The content of Corizon's "daily call[s]" in which educational information and new direction is provided to site physicians on HCV policies and protocols. *See* Prelim. Inj. Tr. Vol. III 610:23-612:15.

7. The identities of all individuals involved in developing, reviewing, approving, implementing, or enforcing Corizon's policies, procedures, and practices related to screening, testing, diagnosing, and counseling or education of inmates with HCV, including but not limited to those identified above, for determining whether and under what circumstances to provide DAA treatment to inmates with HCV, and for monitoring inmates for HCV-related symptoms and/or complications;

8. The identity of any and all members, past and present, of any HCV treatment review committee, Hepatitis C committee, or other such committee staffed in part or in whole by Corizon staff or agents and which makes or assists in making treatment decisions regarding MDOC inmates with HCV, and/or approves, assists in approving, advises, or assists in advising regarding such decisions;

9. The policies and procedures, formal and informal, written and otherwise, and practices of any committee that meets the description in Paragraph 8;

10. The identities of any and all Corizon employees and agents, from January 1, 2014 to present, who approve or assist in approving, or advise or assist in advising, medical personnel

4

who treat inmates with HCV on treatment decisions whether in the capacity of "utilization management" or some other capacity;

11. The policies and procedures, formal and informal, written and otherwise, governing the standards applied by any employee or agent who meets the description in Paragraph 10;

12. Corizon's policies, and procedures, formal and informal, written and otherwise, and practices regarding the screening, testing, and/or diagnosing of HCV of inmates in every other state in which Corizon has contracted for and/or provided healthcare services from January 1, 2014 to present;

13. Corizon's policies and procedures, formal and informal, written and otherwise, and practices regarding the treatment of HCV-positive inmates in every other state in which Corizon has contracted for and/or provided healthcare services from January 1, 2014 to present;

14. Corizon's standard of care for treatment of HCV-positive MDOC inmates from January 1, 2011 to present;

15. The development, review, approval, implementation, amendment, and enforcement of Corizon's current standard of care for treatment of HCV-positive MDOC inmates, and any versions of the standard of care that differ from the current version, starting from January 1, 2014 to present;

16. The identities of all individuals involved in developing, reviewing, approving, implementing, or enforcing Corizon's standard of care for treatment of HCV-positive MDOC inmates from January 1, 2014 to present;

17. HCV training, education, or counseling materials provided to Corizon employees and/or MDOC inmates from January 1, 2014 to present, including but not limited to the documents

5

produced in conjunction with Corizon's Discovery Responses and Bates labeled Corizon 6406-6423;

18. The number and characteristics of the population of inmates in MDOC custody with chronic HCV, including:

    (a) name and MDOC identification number;

    (b) date of birth;

    (c) race;

    (d) date of diagnosis, whether or not diagnosis was made at MDOC facility;

    (e) all test results regarding HCV and dates of same;

    (f) APRI scores and dates of same;

    (g) FIB-4 scores and dates of same;

    (h) fibrosis level, date(s) assessed, and the type of tests or assessments used to make this determination;

    (i) genotype and date assessed;

    (j) prioritization level assigned for treatment purposes;

    (k) if prioritization level has changed over time, the date(s) and reason(s) for the change(s);

    (l) status of treatment; and

    (m) whether the inmate is enrolled in any other chronic care clinic within MDOC;

19. Information regarding those who, as of the date of this Notice, are receiving or who have received DAA treatment since the filing of the Complaint, including:

    (a) The number of individuals who have received DAA treatment, and

    (b) For each of those individuals:

        i. their MDOC identification number;

        ii. the course of drug therapy provided, including the drug name and frequency and duration of therapy;

6

  iii. the results of any viral load or RNA tests conducted since drug therapy was initiated, and the dates of same;

  iv. the source from which the DAA drugs were acquired;

  v. the cost to Corizon, if any, of the prescribed course of drug therapy;

  vi. the cost to MDOC, if any, of the prescribed course of drug therapy;

  vii. if treatment was discontinued, the reason for discontinuation of treatment and date treatment was stopped; and

  viii. date SVR achieved; and

 (c) The rate of successful treatment (i.e., rate of SVR achieved for individuals who successfully completed a full course of DAA treatment);

20.  The process for creating, updating, and/or revising the spreadsheet designated as Exhibit D3 at the preliminary injunction hearing held August 13 through August 16, 2019, and/or its component parts, and the source of the information contained therein;

21.  The names and titles of all individuals involved in and/or responsible for creating, updating, and/or revising the spreadsheet designated as Exhibit D3 at the preliminary injunction hearing held August 13 through August 16, 2019, and/or its component parts;

22.  The number of individuals in MDOC custody who have died from HCV or HCV-related complications from January 1, 2014 through the date of this Notice, and the following information regarding those individuals:

 (a) name and MDOC identification number;

 (b) date of death;

 (c) date of HCV diagnosis, or date Corizon became aware of HCV diagnosis and through what means;

 (d) information regarding HCV treatment received while in MDOC custody, if any, including the dates of any such treatment; and

 (e) circumstances of death;

7

23. Corizon's 2014 medical services contract with the State of Missouri, Bates labeled Corizon 6713-8349, and/or any amendments thereto, including but not limited to documents Bates labeled MDOC 024619-660, MDOC 024820-829, and MDOC 025852-56, and any more recent contract or agreement with the State of Missouri for the provision of medical services in MDOC facilities;

24. Discussions or negotiations between Corizon and MDOC regarding the contracts, amendments, and agreements identified in Paragraph 23, above, as well as discussions or negotiations regarding any future, anticipated, or not-yet-executed contract;

25. Corizon's reliance on, reference to, or use of the Federal Bureau of Prisons guidelines for the Evaluation and Management of HCV in determining appropriate standard of care, treatment protocols, or any other aspect of screening, treatment, and/or monitoring for HCV-positive MDOC inmates;

26. Corizon's reliance on, reference to, or use of the AASLD/IDSA HCV Guidance: Recommendations for Testing, Managing, and Treating Hepatitis C in determining appropriate standard of care, treatment protocols, or any other aspect of screening, treatment and/or monitoring for HCV-positive MDOC inmates;

27. The operation of Corizon's in-house pharmacy, PharmaCorr, including but not limited to:

    (a) PharmaCorr's supply chain and procurement process;

    (b) How and to what extent PharmaCorr interacts and/or works with:

        i. Healthcare providers in correctional facilities, including but not limited to doctors, nurses, and others directly delivering care to inmates;

        ii. Administrators of correctional facilities;

        iii. Corizon management;

8

(c) PharmaCorr's policies and procedures, formal and informal, written or otherwise, and practices, regarding:

    i. Negotiating drug prices other than DAAs with suppliers;

    ii. Negotiating DAA prices with suppliers;

    iii. Determining the price of drugs other than DAAs charged to state correctional systems, as applicable;

    iv. Determining price of DAAs charged to state correctional systems, as applicable;

(d) Whether and to what extent the price of drugs other than DAAs varies between or among different state correctional systems in which Corizon operates; and

(e) Whether and to what extent the price of DAAs varies between or among different state correctional systems in which Corizon operates;

28. The names and contact information of any individuals employed by PharmaCorr who have worked in any capacity on evaluating, reviewing, approving, procuring, or providing DAAs to individuals in the custody of MDOC;

29. Corizon's and/or PharmaCorr's negotiations regarding and/or purchase of any HCV treatment medications or regimes (including but not limited to pegylated interferon alpha 2a, ribavirin, Harvoni, Viekira Pak, Technivie, Vosevi, Epclusa, Mavyret, Sovalidi, Vosevi, Daklinza, and/or Zepatier) in or for any of the state correctional systems in which Corizon operates;

30. The names and contact information of individuals who participated in the negotiations and purchases described in Paragraph 27, above;

31. Any peer review committees utilized or organized by Corizon, to the extent they relate to HCV;

32. Corizon's policies and procedures regarding peer reviews, to the extent they relate to HCV;

9

33. Corizon's relationship, if any, with the Missouri Center for Patient Safety, including but not limited to: (a) the identity of the Patient Safety Program team; (b) the process by which information is collected for and submitted to the PSO and/or any PSES; and (c) the terms of the PSO Contract attached as Exhibit A to the Declaration of Tonya Mooningham (ECF No. 353-2);

34. The identity of any other patient safety organization, as defined by the Patient Safety and Quality Improvement Act, 42 U.S.C. § 299b-22, to whom Corizon reports or has reported in the past, and Corizon's relationship with such organizations;

35. Corizon's PSO Policy, attached as Exhibit A to the Supplemental Declaration of Tonya Mooningham (ECF No. 373-1);

36. Corizon's policies and procedures, formal and informal, written or otherwise, regarding sentinel event reviews and death reviews, to the extent they relate to HCV;

37. Corizon's policies and procedures, formal and informal, written or otherwise, regarding the screening or hiring of medical staff from January 1, 2014 to present;

38. Corizon's policies and procedures, formal and informal, written or otherwise, regarding performance reviews or evaluations of medical staff from January 1, 2014 to present;

39. Corizon's policies and procedures, formal and informal, written or otherwise, and practices regarding responses to MDOC inmate "kites," medical services requests/health services requests, informal resolution requests, grievances, or grievance appeals from January 1, 2014 to present relating or referring to HCV, symptoms that may be attributable to HCV irrespective of whether HCV is named, and/or HCV treatment medications or regimes, including but not limited to pegylated interferon alpha 2a, ribavirin, Harvoni, Viekira Pak, Technivie, Vosevi, Epclusa, Mavyret, Sovalidi, Vosevi, Daklinza, and/or Zepatier;

40. Corizon's policies and procedures, formal and informal, written or otherwise, and practices regarding how inmate medical records are maintained, electronically and/or in hard copy, and how they are shared or the contents communicated amongst medical personnel, including site treaters and outside specialists;

41. The status—including a brief description of the resolution, if applicable—of other lawsuits, filed between January 1, 2012 to present, in which Corizon, or any of its parents or subsidiaries, is a named party and which relate to deliberate-indifference claims regarding HCV testing, treatment, or symptom management in the prison or jail context;

42. The name, address, and telephone numbers for all custodians of the documents produced by Corizon in conjunction with its Discovery Responses;

43. Corizon's corporate administration structure, organizational structure, and management structures, between January 1, 2011 and the present;

44. The identities of all Corizon employees or contractors who currently or at any point since January 1, 2014, have been responsible in whole or in part for overseeing Corizon's provision of healthcare to individuals in MDOC custody, including but not limited to Regional Medical Directors and Assistant Regional Medical Directors;

45. The identities of any firms (including, but not limited to, private equity firms and hedge funds), that have or had any equity stake in Corizon between January 1, 2011, and the present; the role of any such firm in Corizon's 2017 reorganization; the role of any such firm in Corizon's administrative (including financial), organizational, and operational structures, policies, and decisionmaking; and, the role of any such firm in selecting Corizon's contract partners, and/or bidding, negotiating, or executing Corizon's contracts for the provision of healthcare to inmates; and

11

46. Corizon's organizational and operational relationship with defendant MDOC relating to the provision of medical care to MDOC inmates.

Dated: December 4, 2019

Respectfully submitted,

By: /s/ Amy E. Breihan
Anthony E. Rothert, #44827
Jessie Steffan, #64861
Omri E. Praiss, #41850
American Civil Liberties Union
of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63108
Phone: (314) 652-3114
Fax: (314) 652-3112
trothert@aclu-mo.org
jsteffan@aclu-mo.org

Gillian R. Wilcox, #61278
American Civil Liberties Union
of Missouri Foundation
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
Fax: (314) 652-3112
gwilcox@alcu-mo.org

Amy E. Breihan, #65499
Megan G. Crane, #71624
RODERICK & SOLANGE
MACARTHUR JUSTICE CENTER
3115 South Grand Blvd., Suite 300
St. Louis, MO 63118
Phone: (314) 254-8540
Fax: (314) 254-8547
amy.breihan@macarthurjustice.org
megan.crane@macarthurjustice.org

Elizabeth L. Henthorne (*pro hac vice*)
Amelia I. P. Frenkel (*pro hac vice*)
Anastasia M. Pastan (*pro hac vice*)
Tamarra Matthews Johnson (*pro hac vice*)
Wilkinson Walsh + Eskovitz, LLP
2001 M Street NW

10th Floor
Washington, DC 20036
Phone: (202) 847-4000
Fax: (202) 847-4005
bhenthorne@wilkinsonwalsh.com
afrenkel@wilkinsonwalsh.com
apastan@wilkinsonwalsh.com
tmatthewsjohnson@wilkinsonwalsh.com

Meghan C. Cleary (*pro hac vice*)
Wilkinson Walsh + Eskovitz, LLP
130 West 42nd Street, Suite 1402
New York, NY 10036
Direct: (424) 291-9669
Fax: (202) 847-4005
mcleary@wilkinsonwalsh.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of December, 2019, the foregoing *Amended Notice of Rule 30(b)(6) Deposition of Defendant Corizon, LLC* was filed using the Court's electronic case filing system and served in PDF and MS Word format via email to:

| | |
|---|---|
| ERIC S. SCHMITT, Attorney General<br>John W. Taylor<br>Jennifer Baumann<br>Jason K. Lewis<br>Assistant Attorneys General<br>815 Olive Street<br>Saint Louis, MO 63101<br>Phone: (314) 340-7861<br>Fax: (314) 340-7029<br>John.Taylor@ago.mo.gov<br>Jennifer.Baumann@ago.mo.gov<br>Jason.lewis@ago.mo.gov<br><br>Justin D. Smith<br>Deputy Attorney General for Special Litigation<br>P.O. Box 899<br>Jefferson City, MO 65102<br>Phone: (573) 751-0304<br>Fax: (573) 751-0774<br>Justin.Smith@ago.mo.gov<br>*Counsel for defendants MDOC, Precythe, and Hardy* | Dwight A. Vermette<br>ECKENRODE-MAUPIN, Attorneys at Law<br>11477 Olde Cabin Rd., Ste. 110<br>St. Louis, MO 63141<br>(314) 726-6670 (Telephone)<br>(314) 726-2106 (Fax)<br>dav@eckenrode-law.com<br><br>William R. Lunsford<br>Matthew B. Reeves<br>Maynard, Cooper & Gale, P.C.<br>655 Gallatin Street<br>Huntsville, AL 35801<br>Telephone: (256) 551-0171<br>Facsimile: (256) 512-0119<br>blunsford@maynardcooper.com<br>mreeves@maynardcooper.com<br>*Counsel for defendant Corizon, LLC* |

By: /s/ Amy E. Breihan

14