IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MICHAEL POSTAWKO, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 16-CV-4219-NKL |
| | ) | |
| MISSOURI DEPARTMENT OF CORRECTIONS, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Defendant Corizon, LLC moves pursuant to Federal Rules of Civil Procedure 26(b)(5)(B) and 26(C) for a protective order. For the reasons discussed below, the motion is granted in part and denied in part.

**I.  BACKGROUND**

This is a class action by prisoners in the custody of defendant Missouri Department of Corrections ("MDOC") who have chronic Hepatitis C. Corizon has contracted with MDOC to provide medical services to prisoners in its custody. Pursuant to 42 U.S.C. § 1983, Plaintiffs seek injunctive relief with respect to Defendants' screening, testing, and treatment of inmates with chronic HCV.

Corizon produced more than 50,000 emails and associated documents to Plaintiffs on what it describes as a "highly compressed schedule" in order to make them available before the August 13, 2019 preliminary-injunction hearing. Doc. 353 (Corizon's Motion for Protective Order and Suggestions in Support), p. 1. Counsel for Corizon and counsel for the plaintiffs agreed that the documents produced would be treated as "Confidential-Attorneys' Eyes Only" under the Joint Stipulated Protective Order (Doc. 168). Because Corizon's privilege review was

1

ongoing, Plaintiffs agreed that Corizon "may need to claw back certain records" after Corizon completed its review. Doc. 366 (Plaintiffs' Suggestions in Opposition to Motion for Protective Order), p. 1.

Corizon now seeks to claw back seven emails, with attachments, that it claims are protected by the patient safety work product privilege and the Patient Safety and Quality Improvement Act of 2005 ("PSQIA"), 42 U.S.C. § 299b-21 *et seq.*:

| **Description** | **Subject Line** | **Attachment(s)** | **Bates No.** |
|---|---|---|---|
| (1) Mar. 2016 email chain from Dr. Bredeman to Milton Hammerly, forwarded by Tara Taylor to Bonnie Boley, Geeneen Wilhite, and Debora Steinman | SE [Mr. B.] | Mar. 6, 2016 Sentinel Event Review relating to the death of inmate Mr. B. (prepared by Dr. Bredeman) | Corizon025515-17 |
| (2) Mar. 14, 2017 email from Dr. Lovelace to Tara Taylor, Bonnie Boley regarding death of "Mr. A." | sentinel event | No attachment | Corizon026059 |
| (3) Mar. 9, 2017 email from Bonnie Boley to Dr. Lovelace, Sentinel Event Committee | death summaries from STARS | Mr. O. and Mr. G. death summaries (prepared by Dr. Aguilera) | Corizon029113-15 |
| (4) Sept. 14, 2015 email from Dr. Bredeman to Tara Taylor, Cindy Schupp, Jenny Meehan | SE Reviews | SE Review for Mr. J.; SE Review for Mr. M. (prepared by Dr. Bredeman) | Corizon075742-43 |

2

| (5) Nov. 7, 2016 email from Tara Taylor to Wanda Laramore, Krystal Houston, Dr. Lovelace, Dr. Bredeman | Review Sentinel Event [Mr. R.] | Sentinel Event Committee Feedback RE death of Mr. R. | Corizon075967-69 |
|---|---|---|---|
| (6) July 2016 email chain between Dr. Stamps, Dr. Hammerly, Dr. Bredeman, Tara Taylor | FW: A sentinel event has been reported | Sentinel Event relating to death of Mr. B. | Corizon100649-51 |
| (7) Nov. 16, 2015 email from Dr. Bredeman to Tara Taylor, Dr. Hammerly | SE catch-up | Sentinel Event Review for Mr. A. | Corizon163930-31 |

Doc. 353, p. 2.

## II.    DISCUSSION

The PSQIA provides, in relevant part, that "patient safety work product shall be privileged and shall not be . . . subject to discovery in connection with a Federal, State, or local civil, criminal, or administrative proceeding . . . ." 42 U.S.C. § 299b-22(a)(2). The PSQIA defines "patient safety work product," in relevant part, as "any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements . . . which . . . are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization; . . . and which could result in improved patient safety, health care quality, or health care outcomes." 42 U.S.C. § 299b-21(7)(i)(I). Thus, "[w]hile the PSQIA announces broad evidentiary protections for patient safety work product, its drafters made clear that the statute was not intended to provide a blanket protection for all information

3

and communications generated for quality control purposes." *Johnson v. Cook Cty.*, No. 15-0741, 2015 U.S. Dist. LEXIS 115868, at *17 (N.D. Ill. Aug. 31, 2015). To qualify for the patient safety work product privilege, material must have been assembled for the purpose of reporting to a PSO and also must have been reported to the PSO. *See Taylor v. Hy-Vee, Inc.*, No. 15-9718, 2016 U.S. Dist. LEXIS 177764, at *5 (D. Kan. Dec. 22, 2016) ("The text of the PSQIA emphasizes that only information specifically made or gathered for a PSO or a patient safety evaluation system is patient safety work product.").

The question before the Court is whether the seven emails and attachments that Corizon seeks to claw back constitute "patient safety work product" that is protected from disclosure. As the party asserting the privilege, Corizon bears the burden of establishing that the records should be protected from disclosure. *See In re Grand Jury Proceedings*, 655 F.2d 882, 887 (8th Cir.1981) ("The burden is on the party asserting a privilege to establish it.").

Corizon cites the facts that it "maintains a contractual relationship with a federally recognized Patient Safety Organization ('PSO') and that, pursuant to the contract, Corizon developed a Patient Safety Evaluation System ('PSES') for collecting, maintaining, and managing information for reporting to or by its PSO. Doc. 353-2 (Declaration of Tonya Mooningham dated August 15, 2019), ¶¶ 3-4 and Exhibit A, § 3.5. Corizon argues that sentinel event reviews, death reviews, and related documents are "a critical component of Corizon's patient safety program" and are created "specifically for submission to Corizon's PSES and reporting to Corizon's PSO. Doc. 353-2, ¶ 10. Corizon claims that the documents at issue "were all created for the purpose of submission to the PSES and reporting to Corizon's PSO" and were "all part of Corizon's PSES," and Corizon either "reported [them] and/or made them available to its PSO." Doc. 353, pp. 3-4.

4

## a. Documents Not Reported to the PSO

Corizon concedes that two of the documents at issue—a September 14,[1] 2015 Sentinel Event Review relating to inmate "Mr. J" and a November 15, 2015 Sentinel Event Review relating to inmate "Mr. A"—were not reported to the PSO. Doc. 353-2, ¶ 18, 21. Corizon, nonetheless claims that these materials were "available to the PSO upon the PSO's request." Making documents available to a PSO upon request is not equivalent to reporting them to the PSO. *See Johnson*, 2015 U.S. Dist. LEXIS 115868, at \*25 ("Defendant cannot simply make an internal report that otherwise is not privileged under the PSQIA functionally available to a PSO and then assert it is privileged under the PSQIA. If that were sufficient, similarly situated defendants could insulate large swaths of otherwise discoverable internal documents with the talismanic incantation that the information was theoretically available to a PSO. That does not comply with the intent or spirit of the statute."). The materials that were not reported to the PSO thus do not constitute patient safety work product and the privilege does not apply to them.

## b. Version Different from that Reported to PSO

Plaintiffs next argue that the March 14, 2017 email is not protected because only a different version of the document was submitted to the PSO. Corizon's reply appears to suggest that the version not submitted to the PSO nonetheless is protected because "Corizon treats all drafts of sentinel event document [*sic*] as part of its PSES." Corizon's reference to the PSES

---

[1] Ms. Mooningham describes it as a September 13, 2015 document, but the attorneys for both parties uniformly refer to it as a September 14, 2015 document.

Notably, the document was created *before* Corizon's PSO policy went into effect. *See* Doc. 372, p. 2 (noting that the "policy became effective on November 1, 2015"). The September 2015 material cannot be deemed privileged under the PSQIA for the additional reason that it was not created for the purpose of reporting to the PSO. *See Dunn v. Dunn*, 163 F. Supp. 3d 1196, 1210 (M.D. Ala. 2016). ("[I]nformation that is not developed for the purpose of reporting to a patient safety organization does not become privileged merely because it is in fact reported to one.").

5

might have been an attempt to distinguish the material it seeks to protect from the "information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system," which the statute declares "shall not by reason of its reporting be considered patient safety work product." 42 U.S.C.S. § 299b-21(7)(b)(ii). However, the mere fact that Corizon's sentinel event review materials were part of a PSES does not render the material privileged under the PSQIA. Inclusion in the PSES may be a critical component of patient safety work product, but it is not the only requirement.[2] Even if the March 14, 2017 email is part of the PSES, that fact is irrelevant to the question of whether the document was submitted to a PSO.

Moreover, Corizon has not provided, *in camera* or otherwise, evidence or even argument showing that the "version" of the document at issue effectively consists of the same or materially similar language as the "version" submitted to the PSO, *i.e.*, a true draft of the document actually prepared for the PSO and submitted to the PSO. Corizon therefore has failed to meet its burden to establish that the March 14, 2017 email is privileged.

---

[2] The PSQIA does include certain PSES material within the definition of "[p]atient safety work product," but the material at issue here does not fall within that definition. *See* 42 U.S.C. § 299b-21(7)(A) ("[T]he term 'patient safety work product' means any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements . . . (ii) which identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system."). Indeed, Corizon did not argue that the documents at issue constitute deliberations or analysis of, or identify the fact of reporting pursuant to, a PSES, or otherwise suggest that the documents are protected under 42 U.S.C. § 299b-21 (7)(a)(ii). *See* Docs. 353, 372.

### c. Other Documents

As for the remaining materials, in light of the fact that Ms. Mooningham has declared that they were prepared for the purpose of reporting to the PSO, and they were so reported, Corizon has sufficiently shown that the patient safety work product privilege attaches.[3]

### III. CONCLUSION

For the reasons discussed above, Corizon's motion for a protective order is granted in part and denied in part. Plaintiffs must, within one week, return or destroy, and may not use for any purpose, all copies in their possession of the following documents: Corizon025515–17, Corizon029113–15, Corizon075967–69, and Corizon100649–51. The motion for a protective order otherwise is denied.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: February 11, 2020
Jefferson City, Missouri

---

[3] If it were to come to light that the data in those materials was gathered or the analysis in those materials was conducted for any purpose other than reporting to a PSO, the privilege may not have attached or may have been waived. *See Johnson*, 2015 U.S. Dist. LEXIS 115868, at *21 ("Information generated or assembled for some other purpose, even if the information relates to quality improvement measures, is not considered patient safety work product."); *but see Taylor*, 2016 U.S. Dist. LEXIS 177764, at *9 (holding that data that was "*used* as part of defendant's internal and state-mandated quality improvement system" nonetheless could be deemed to have been "*developed* for reporting to a PSO") (emphases in original).